984 So.2d 900 (2008)
Robert T. GARRITY, Jr.
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, M.G. Mayer Yacht Services, Inc. and ABC Insurance Company.
No. 07-CA-965.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 2008.
*902 Patrick D. Derouen, Attorney at Law, New Orleans, LA, for Plaintiff/Appellee.
Al M. Thompson, Jr., Attorney at Law, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, WALTER J. ROTHSCHILD, and GREG G. GUIDRY.
GREG G. GUIDRY, Judge.
Defendants, M.G. Mayer Yacht Services, Inc., and its insurer Essex Insurance Company, appeal from the trial court judgment in favor of Plaintiff, Robert T. Garrity, Jr., awarding him $22,166.00 plus court costs and legal interest from the date of judicial demand, for damages he sustained as a result of the negligent work done on his trawler yacht. For the reasons which follow, we affirm.
Garrity purchased a 41-foot Performance Trawler, the LUANA, in January 2003. In April of 2003, Garrity hired Mayer to renovate the heads (bathrooms) on the vessel by removing the manually operated toilets and installing electric ones. To bring power to the electric toilets, Mayer installed a three-block fuse panel on the vessel's helm station. The two toilets were wired through this fuse panel. The lead wire for the third fuse block was not being used. Typically, when a wire such as this is not being used, it is capped off with a plastic cap on the end of the wire, taped off with tape or silicone covering the wire, or removed from the base. This work was completed in July of 2003. In June of 2004, while cruising in Lake Pontchartrain, the LUANA lost steerage. It was determined that the metal parts of the steering system beneath the waterline had been severely damaged, as had the rudders, due to a current problem, referred to as electrolysis. Thereafter, Seabrook Marine was hired to examine the vessel, determine the cause of the problem and repair it. Jeffrey Montz, the manager/owner of Seabrook Marine testified that during his examination of the LUANA he discovered that a wire was touching the copper line for the steering and causing the electrolysis that damaged the vessel. The wire was *903 the third, unused wire from the three block fuse panel that Mayer installed when doing the renovations on the bathrooms. The wire was neither capped off nor taped off.
Garrity made a claim for the damages to his vessel against his insurer, St. Paul Fire & Marine Insurance Company. St. Paul denied the claim. Garrity also made amicable demand on Mayer. On August 11, 2004, Garrity filed suit against Mayer.[1] The matter was tried without a jury on April 2, 2007. The trial court rendered judgment on April 25, 2007, in favor of Garrity and against Mayer for $22,166.00 plus costs and interest from the date of demand. It is from this judgment that Mayer appeals.
On appeal, Mayer assigns four errors in support of his argument that the trial court was clearly wrong in rendering judgment in favor of Garrity. More specifically, Mayer argues that because he did not have exclusive custody or control of the vessel, and the corrosive damage did not occur until after other repairmen worked on the vessel in the same vicinity of the loose wire, Garrity failed to exclude other reasonable explanations for how the damage occurred. Therefore, Mayer argues Garrity did not meet his burden of proof by a preponderance of the evidence.
Garrity argues, to the contrary, that no one else worked on that specific part of the vessel, the loose wire showed no evidence of ever being capped or taped, and the record, as a whole, supports a finding that the factfinder's conclusion was a reasonable one.
In a negligence action, the plaintiff bears the burden of proving negligence on the part of the defendant by a preponderance of the evidence. Hanks v. Entergy Corp., 06-477, p. 19 (La.12/18/06), 944 So.2d 564, 578. Proof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, shows the fact sought to be proved is more probable than not. Id. The plaintiff does not have to conclusively exclude all other possible explanations for his injuries, as he would if the standard was proof beyond a reasonable doubt. Id. The proof may be by direct or circumstantial evidence. Id. However, the inferences drawn from the circumstantial evidence must cover all of the necessary elements of negligence, and the plaintiff must still sustain the burden of proving his injuries were more likely than not the result of the defendant's negligence. Id. at 20, 944 So.2d at 579. If, as in this case, circumstantial evidence is relied upon, that evidence taken as a whole, and considered with the direct evidence, must exclude every other reasonable hypothesis with a fair amount of certainty. Id. at 20, 944 So.2d at 579.
The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, and whether the duty was breached. Id. at 21, 944 So.2d at 579. Whether the defendant breached that duty and whether that breach was a cause in fact of the plaintiff's injuries are factual question to be determined by the factfinder. Id. at 22, 944 So.2d at 580. The standard of review by an appellate court of a district court's findings of fact is well known. The district court's factual findings may not be set aside in the absence of manifest error or unless they are *904 clearly wrong. Where there is a conflict in the testimony, inferences of fact should not be disturbed upon review, even though the reviewing court may feel that its own evaluations and inferences are as reasonable. Hanks v. Entergy Corp., 06-477, p. 22 (La.12/18/06), 944 So.2d 564, 580; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Stobart v. State, Though DOTD, 617 So.2d 880, 882 (La.1993). In order to reverse a district court's determination of a fact, a reviewing court must review the record in its entirety and (1) find a reasonable factual basis does not exist for the finding, and (2) further determine the record establishes the factfinder is clearly wrong or manifestly erroneous. Hanks, 06-477 at 22, 944 So.2d at 580; Bonin v. Ferrellgas, Inc. 03-3024, p. 6-7, 877 So.2d 89, 94-95; Stobart, 617 So.2d at 882. The issue to be resolved by the reviewing court is not whether the factfinder was right or wrong, but whether the factfinder's conclusion was a reasonable one. Hanks, 06-477 at 23, 944 So.2d at 580; Stobart, 617 So.2d at 882.
Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Hanks, 06-477 at 23, 944 So.2d at 580; Bonin, 03-3024 at 7, 877 So.2d at 95; Rosell, 549 So.2d at 844. When findings are based on determinations regarding the credibility of witnesses, the manifest error or clearly wrong standard demands great deference to the trier of fact's findings because only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Hanks, 06-477 at 23, 944 So.2d at 580; Bonin, 03-3024 at 7, 877 So.2d at 95; Rosell, 549 So.2d at 844.
Applying these principles to the case before us, we find that the record provides a reasonable factual basis for the trial court's findings and we do not find that the factfinder was clearly wrong or manifestly erroneous in its judgment.
Garrity presented two witnesses in support of his case, one of which was himself. Garrity testified as to his history with the vessel from its purchase in January 2003 to the present. He testified as to the specific work he had done by Mayer in April 2003, as well as the work he had done by Seabrook in February 2004, and by Cletus Junius in April 2004. He also testified describing photographs he had taken, which were entered into evidence. One of the photographs showed the stray wire from the three block fuse panel Mayer installed that caused the electrolysis corrosion damage at issue. Garrity testified that when he saw the wire it did not have markings on it indicating it had been capped off or glue residue indicating it had been taped off. Garrity testified and presented invoices concerning the cost of repairs, $22,166.00, necessitated by the electrolysis.
Jeffrey Montz, the manager/owner of Seabrook also testified. Montz testified that he did the investigative work to determine the cause of the electrolysis damage to the vessel. After checking several possibilities, he testified that he finally found the loose wire from the three block fuse panel that had been installed for the electric toilettes. The wire was not capped off. It had come into contact with the copper tubing for the steering and had actually fused to it over time. There were two other burn spots on the copper tube in addition to the third burn spot where the loose wire had fused to it. He testified that this stray current, occurring when the wire touched the copper tubing, caused the electrolysis damage to the vessel. He further testified that since cutting the wire off in October 2004, until the time of trial, *905 April 2007, the LUANA has had no further electrolysis problems.
Based on this testimony we find a reasonable factual basis for the trial court findings. The testimony establishes that Mayer did renovation work on the Garrity's vessel in June and July of 2003, shortly after the vessel was purchased, that involved the placement of a three block fuse in the helm. Only two of the ports were utilized in the renovation work, leaving a third unused. A wire extended from the third port which should have been capped off or taped off to prevent it from coming into contact with other metal surfaces and causing electrolysis damage. Upon discovery of the wire after the June 2004 steering failure, it was observed that the wire had not been capped off or taped off and had arced on the copper tubing three times, the last fusing the wire to the pipe. This was determined to be the cause of the electrolysis damage to the vessel. Repair of the electrolysis damage cost $22,166.00. None of this evidence was rebutted.
Mayer's defense to liability is that Garrity failed to prove that no one other than Mayer could have caused the problem that lead to the electrolysis damage, or that someone else should be responsible for not discovering it sooner. We find no such burden for Garrity to overcome.
As stated above, through direct and circumstantial evidence, it is Garrity's burden to prove by a preponderance of the evidence that, more likely than not, the damages he sustained were the result of Mayer's negligence. The evidence shows that the electrolysis damage to the vessel was caused by the wire from the three block fuse, installed by Mayer, touching the copper tubing for the steering. The evidence also shows that the wire was likely not capped off or taped off as it should have been. In contrast, there was nothing in the record indicating that someone else should have discovered this problem or rectified it; nor was it shown that the problem was caused by anyone else.
Mayer argues that the fact that there was a seven month period following his work when no electrolysis damage was noted negates Garrity's proof. However, this argument ignores the evidence that the loose wire struck the copper tubing three times and thus may have taken some time before it fused to the tubing. Therefore, we find, after reviewing the record, that there was a reasonable factual basis for the trial court finding that Mayer is liable to Garrity for the electrolysis damage to his vessel and it was not clearly wrong.
Accordingly, for the foregoing reasons, we affirm the judgment of the trial court in favor of Robert T. Garrity, Jr., and against M.G. Mayer Yacht services, Inc. and Essex Insurance Company, in the amount of $22,166.00 plus court costs and legal interest from the date of judicial demand.
AFFIRMED.
NOTES
[1] Garrity originally filed suit against Mayer and St. Paul in First Parish Court. After discovering that his damages exceeded the jurisdiction of First Parish Court, the suit was transferred to the Twenty-Fourth Judicial District Court and the petition was amended to add Mayer's Insurer, Essex. St. Paul filed a cross-claim against Mayer but upon settling with Garrity, St. Paul dismissed its cross-claim and was dismissed from the suit.