JEROME M. WINSBERG, Judge Pro Tempore.
IgThe Defendant, the City of Kenner (Kenner), appeals a judgment in a slip and fall ease in favor of the Plaintiff, Nadine A. *414 Nunnery, individually and on behalf of minors, Chelsea and Kailyn Nunnery. We affirm in part, reverse in part, and amend.
The Plaintiff, a volunteer assistant volleyball coach, slipped and fell inside the Muss Bertolino Gymnasium (the gym) in Kenner, Louisiana on Saturday, August 25, 2001. The gym is operated by Kenner.
On the day of the accident, the Plaintiff and her two children arrived at the gym around noon for practice. Approximately thirty minutes later, she noticed water collecting on the ground around the mat near the water fountain. She reported the water to the part-time weekend Gym Supervisor, Marion Bonura, who was in his office watching television. The Plaintiff never saw Mr. Bonura leave his office to mop up the water. Volleyball practice lasted approximately another hour, |aafter which the Plaintiff began moving the volleyball net and poles. While doing so, she slipped and fell on water in the same general area she had previously reported standing water. Present at the time were the Plaintiffs children and another parent, Christie Ricker, and her children.[1] According to the Plaintiff, the water had spread further from the fountain from the time she reported it to the time she fell.
The Plaintiff filed suit against the Defendant for negligence. The Plaintiff claimed that she was unaware that the water puddle had not been removed, or that it was covering a larger area. The Plaintiff asserted that she suffered damages to her low back, groin area, left knee, right arm, and right wrist, and aggravation of her two pre-existing knee injuries. Her knee required arthroscopic surgery to repair a lateral meniscus tear and flap tear. The surgeon, Dr. Kurt Kitziger, also repaired a pre-existing ACL tear and a pa-tellafermoral injury. The Plaintiff alleged that Dr. Kitziger stated that the pre-exist-ing knee problems were aggravated by the fall. The doctor also found that the fall aggravated a pre-existing carpal tunnel syndrome in her right wrist.
Trial was held on July 23, 2008. At the conclusion of the case on the same day, the Defense made a motion of involuntary dismissal on the basis that the Plaintiff failed her burden of proof. It further urged the trial judge to apply an adverse presumption against the Plaintiff for failing to call her daughter, Chelsea, who was 12 years old at the time of the accident. The trial judge denied the motion, and found in favor of the Plaintiff. He awarded the Plaintiff $80,000 in general damages and $16,717.35 in special damages, plus judicial interest and costs.
On appeal, Kenner first argues that the trial judge was manifestly erroneous in finding that the Plaintiff met her burden of proof under La.R.S. 9:2800. Second, |4it asserts that that the trial judge erred in failing to apply an adverse presumption in regard to the Plaintiffs failure to call her daughter, a witness to the fall. Alternatively, the Defendant argues that the trial judge erred in failing to apportion the comparative fault of the parties, and further asserts that the damages are excessive.
STANDARD OF REVIEW
The Defendant argues that we should review the case de novo due to a technical error.
After the close of the case and the matter submitted, the court discovered that the audio recording failed during the trial, and only the Plaintiffs testimony was recorded. The parties agreed to appear on August 13, 2008 to submit the deposition testimony of the witnesses who had testified, but were not recorded. The Plaintiff *415 submitted the depositions of Kenner employees, Barbara Giarratano, Gym Supervisor; Nick Sortina, Playground Supervisor and Dr. Kurt Kitziger. The Defendant submitted the deposition of Mr. Bonura. After the evidence was introduced and submitted, the trial judge immediately ruled. The Defendant argues that, because the trial judge ruled without reading the depositions, we should review the case de novo.
We disagree that a de novo review is warranted. The record reflects that the trial judge listened to the testimony of the same witnesses before the technical failure was discovered and was able to make credibility determinations. Furthermore, the Defendant did not object to the judge’s action at the time he ruled. Therefore, it waived the objection. See, La.C.C.P. art. 1635.[2]
IfiThe standard for appellate review of the trial court’s findings of fact is manifest error, or whether the fact finder was clearly wrong. Garrity v. St. Paul Fire & Marine Ins. Co., 07-965 (La.App. 5 Cir. 4/15/08), 984 So.2d 900, 904, writ denied, 08-1051 (La.8/29/08), 989 So.2d 106.) In addition, the reviewing court must review the record in its entirety and find a reasonable factual basis either does or does not exist for the findings in order to affirm, modify or reverse the trial court. Id.
In making this determination, the issue is not whether the factfinder was right or wrong, but whether the factfinder’s conclusion was reasonable in light of the whole record. Id.; Ambrose v. New Orleans Department Ambulance Service, 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216, 220; Cannet v. Franklynn Pest Control Company, 08-56 (La.App. 5 Cir. 4/29/08), 985 So.2d 270, 274.[3]
When factual findings are based on determinations of witnesses’ credibility, the manifest error or clearly wrong standard demands great deference to the trier of fact’s findings since only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Garrity, 984 So.2d at 904. Thus, where there is a conflict in the testimony, inferences of fact should not be disturbed upon review, even though the reviewing court may feel that its own evaluations and inferences are as reasonable. Id. Furthermore, where there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous or clearly wrong. Garrity, 984 So.2d at 904.
1 SUABILITY
Tort liability in Louisiana is governed by La.C.C. art. 2315 which states that “[ejvery act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” In a negligence action under Article 2315, the plaintiff bears the burden of proving fault, causation and damages. Buckley v. Exxon Corp., 390 So.2d 512, 514 (La.1980); Wainwright v. Fontenot, 00-0492, p. 5 (La.10/17/00), 774 So.2d 70, 74; Beausej *416 our v. Percy, 08-379, p. 6 (La.App. 5th Cir.10/14/08), 996 So.2d 625, 628.
La.R.S. 9:2800 governs liability of public entities. The pertinent provisions state:
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody....
C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
D. Constructive notice shall mean the existence of facts which infer actual knowledge.... [Emphasis added.]
The Plaintiff testified that shortly after she arrived for volleyball practice, she noticed water on the floor near the water fountain. The water was around the mat that was next to the water fountain. She told Mr. Bonura, who was sitting in his office watching television, about the leak. She stated that she did not see Mr. Bonura mop the floor during or after practice. Approximately one hour later, the Plaintiff slipped and fell in the same area while she and her daughter were moving the volleyball poles following practice. The Plaintiff testified that the water had spread further outward from the original puddle at the time she fell. She did not |7report the injury right away to Mr. Bonura, who was still in his office, because she did not realize how badly she was injured.
The Plaintiff stated that she did not notice the water on the floor when she fell, because she was concentrating on moving volleyball poles at the time. She did not look down at the water afterward because she was in pain, but she knew she had slipped on a liquid. She did not take any photographs of the area.
The Plaintiff admitted that she did not know if the water actually came from the fountain, rather than from water bottles or coolers brought to the gym by others.
After she left the gym, the Plaintiff went to her mother’s house. While there, her left knee started to swell and hurt. She treated it with pain medication and ice. Later that day, she telephoned the full-time Gym Supervisor, Barbara Giarratano and left a message reporting the incident. The Plaintiff spoke to Ms. Giarratano the next day, a Sunday.
On Monday, the Plaintiff went to see her doctor. He prescribed medication and ordered her not to go to work for three days, and to use crutches due to the swelling and pain in her left knee. She was later referred to the surgeon, who operated on the knee.
The Plaintiff returned to the gym on Monday to watch her daughter’s volleyball practice, but her injuries prevented her from coaching. That same day, she spoke to Ms. Giarratano and Nick Sortina, the Playground Supervisor. The Plaintiff testified that she also told all of the Kenner employees at the gym that she had fallen after slipping in the water around the fountain, and showed them the location. According to the Plaintiff, Mr. Sortina told her that the fountain leaked, and had not been repaired. Yet, despite informing the employees of the accident, none of the Kenner gym employees prepared an accident report.
|sMr. Bonura testified that he did not have an independent memory of the incident. He also stated that no one had ever *417 complained of water leaking or had fallen prior to this alleged accident.
In her deposition, Ms. Giarratano stated that the fountain had been repaired several times; the last in 2003, two years after the accident. At that time it was replaced, according to Ms. Giarratano, Mr. Sortina and Mr. Bonura. Ms. Giarratano further stated that no lawsuits had ever been filed for this type of event.
Adverse Presumption
The Defendant agrees that the Plaintiffs testimony of the events was un-controverted, but argues that the adverse presumption should apply because she failed to call her daughter to testily to support the claim.
An adverse presumption exists when a party having control of a favorable witness fails to call him or her to testify, even though the presumption is rebuttable and is tempered by the fact that a party need only put on enough evidence to prove the case. Driscoll v. Stucker, 04-0589 (La.1/19/05), 893 So.2d 32, 47. The adverse presumption is referred to as the “uncalled witness” rule and applies when a party has the power to produce witnesses who would elucidate the transaction or occurrence and fails to call those witnesses. Id.
The Defendant did not originally raise this issue. It was mentioned for the first time following the introduction of the depositions when the Defendant motioned the court for an involuntary dismissal. Because of this surprise argument, the Plaintiff was not provided the opportunity to explain the absence of her daughter in rebuttal through testimony or deposition. To apply it at this juncture would be manifestly unfair. Thus, we find that the trial judge did not err in refusing to consider or apply the presumption.
^Furthermore, we find that the Plaintiff proved that she slipped and fell in standing water, and that the water created a dangerous condition which had been reported to the Defendant’s employee. The uncontroverted evidence shows that the Defendant had actual knowledge of the defect that caused the injuries. We further find that the Defendant had ample opportunity to correct the dangerous condition which would have prevented the Plaintiff from falling. Thus, the Plaintiff bore her burden of proof under La.R.S. 9:2800, and the trial judge was not clearly wrong in the finding the Defendant at fault.
COMPARATIVE FAULT
The factors to be considered by the courts in determining the percentages of fault are the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages. Watson v. State Farm Fire and Cas. Ins. Co. 469 So.2d 967, 974 (La.1985) In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire and Cas. Ins. Co. 469 So.2d 967, 974 (La.1985).
The Plaintiff acted responsibly in reporting the leak. Further, she cannot be blamed for failing to remember a condition that existed an hour prior to the fall. But, her own actions contributed to the accident, and comparative negligence applies.
*418 The Plaintiff was attempting to move one of the heavy poles near the area of the floor where she had previously observed the puddle of water. The net was still linattached to both heavy poles during this effort. Given the circumstances, we find that she should have taken more care for her safety. Consequently, we will reverse and amend the judgment as to the fault of the parties, and will apportion the Plaintiffs fault at 20%.
DAMAGES
Damage awards are divided into special damages and general damages. Special damages are those which either must be specially pled or can be determined with relative certainty, such as medical expenses. Wainwright, 00-0492 at 5, 774 So.2d at 74; Beausejour, 08-379 at 6, 996 So.2d at 628. General damages are inherently speculative in nature and cannot be fixed with any mathematical certainty. These include pain and suffering. Wainwright, 00-0492 at. 5, 774 So.2d at 74; Coco v. Winston Indus., Inc., 341 So.2d 332, 334 (La.1977); Beausejour, 08-379 at 6, 996 So.2d at 628. The plaintiff has the burden of proving the damage he suffered as a result of the defendant’s fault. Wainwright, 00-0492 at 10, 774 So.2d at 77; Beausejour, 08-379 at 6, 996 So.2d at 628.
The assessment of the appropriate amount of damages is a factual determination and is entitled to great deference by the reviewing court. Wainwright, 00-0492 at 10, 774 So.2d at 77; Beausejour, 08-379 at 6, 996 So.2d at 628. Thus, in reviewing the factfinder’s assessment of general damages, the court does not decide what it considers to be an appropriate award, but rather reviews the record to determine whether the trier of fact abused that discretion. Wainwright, 00-0492 at 10, 774 So.2d at 77; Beausejour, 08-379 at 6, 996 So.2d at 628.
An award by the trial court cannot be disturbed without finding an abuse of discretion, and then it can only lower the award (or raise it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. In Wainwright, 00-0492 at 6, 774 So.2d at 74; Beausejour, 08-379 at 6, 996 So.2d at 628.
The Defendant contends that the damages are excessive. We disagree. Although her main injuries were to her knee, the Plaintiff also initially suffered pain in her low back, groin area, left knee, right arm, and right wrist. The knee injury required surgery to repair a new tear in her knee, and according to Dr. Kitziger, the fall aggravated two pre-existing knee injuries, which he repaired at the same time. The doctor also found that the fall aggravated a pre-existing carpal tunnel syndrome in her right wrist.
In order to reduce the damages, we must find the trial judge abused his great discretion. We find no abuse of discretion under these circumstances. Furthermore, even though we are not bound by the damage awards in other cases, this award is in line with similar cases. In Goutro v. Sullivan, 07-1430 (La.App. 3 Cir. 5/7/08), 986 So.2d 673, the appellate court increased the plaintiffs damages for a surgically repaired torn medial meniscus with recurrent back spasms from $25,000 to $150,000. In Gilpin v. State Farm Mut. Auto. Ins. Co., 99-36 (La.App. 5 Cir. 5/19/99), 735 So.2d 921, an accident caused the Plaintiffs pre-existing chrondromalacia to worsen necessitating the surgery. This Court affirmed an award of $75,000 for the surgical repair of the plaintiffs damaged knee cartilage.
Accordingly, the judgment of the trial court is hereby reversed in part, amended in part, and affirmed in part. The judgment is reversed insofar as it finds the *419 Defendant 100% at fault in the accident, and the Defendant’s liability is hereby reduced to 80%. The judgment is amended to apportion the remaining 20% of the fault to the Plaintiff. The judgment is affirmed in all other respects.

AFFIRMED IN PART, REVERSED IN PART, AND AMENDED.

. Ms. Ricker moved to Florida after the accident and was unavailable for trial.

. La.C.C.P. art. 1635 states:
Formal exceptions to rulings or orders of the court are unnecessary. For all purposes it is sufficient that a patty, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefore; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.

. Citing Hanks v. Entergy Corp., 06-477, p. 22 (La.12/18/06), 944 So.2d 564, 580; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Stobart v. State, Though DOTD, 617 So.2d 880, 882 (La.1993); and Bonin v. Ferrellgas, Inc., 03-3024, p. 6-7, 877 So.2d 89, 94-95.