MARC E. JOHNSON, Judge.
 

 |2Plaintiff, Charles Eckert, appeals from a judgment of the trial court dismissing all of his claims against defendant, Kermit Roux, Jr., for breach of fiduciary duty after finding plaintiff failed to prove defendant exercised gross negligence or a careless disregard for the best interest of Roux and Associates and/or its shareholders. For the reasons that follow, we affirm.
 

 Facts & Procedural History
 

 Roux and Associates was incorporated in December 1970 as a professional medical corporation. The corporation had two members, plaintiff, Dr. Charles Eckert, an anesthesiologist who owned 49 shares of stock, and defendant, Dr. Kermit Roux, Jr., also an anesthesiologist, who owned 51 shares of stock.
 
 [1]
 
 Dr. Roux served as the president of the corporation and managed the everyday business of the corporation. Dr. Eckert served as secretary of the corporation for a period of time and then later served as the vice president. While Dr. Eckert testified there were no regular shareholder meetings, Dr. Roux testified that informal meetings were held annually.
 

 On April 28, 1989, Dr. Eckert sent a letter to Dr. Roux resigning as a director, an officer and an employee of Roux and Associates. He offered his stock in the corporation and requested he be paid his pro rata share of the corporation’s net worth. Upon his resignation, Dr. Eckert requested an accounting to determine the amount owed to him for his stocks.
 
 [2]
 
 Both parties agree that Dr. Eckert’s stock was never purchased by Dr. Roux or the corporation and that Dr. Eckert remains owner of the 49 shares.
 
 [3]
 

 In the summer of 1989, Dr. Eckert retained the services of David Kushner, a certified public accountant, to review the records of Roux and Associates and Jefferson Medical Services, Inc. (JMS), a company responsible for Roux and Associates’ billing and collection, to determine the amounts owed to Dr. Eckert during his employment with Roux and Associates. According to Dr. Eckert, he had suspicions that he had not received his proper share of the corporation’s profits.
 

 At trial, Mr. Kushner testified that he reviewed the books and records of JMS and some of the tax returns of Roux and Associates. He admitted he did not have the complete records of JMS. From the records he reviewed, Mr. Kushner noted several transactions where money collected by JMS was not remitted to Roux and Associates, but rather was loaned to various parties or paid to other parties on behalf of Dr. Roux. He also noted a trans
 
 *639
 
 fer account where money collected by JMS was recorded into the transfer account and not the account of Roux and Associates. Although he admitted he did not have the records necessary to trace the funds in and out of the transfer account, Mr. Kushner estimated that ^approximately $10,066,000 was owed to Roux and Associates. Based on his understanding that Dr. Eckert’s share of Roux and Associates was fifty percent, Mr. Kushner opined that Dr. Ec-kert was owed approximately $3.1 million. On cross-examination, Mr. Kushner admitted that if Dr. Eckert knew and approved of the loans made by JMS, Dr. Eckert would need to suffer part of the loss resulting from bad loans that were written off.
 

 In April 1999, Dr. Eckert filed a lawsuit against Dr. Roux and Roux and Associates alleging Dr. Roux had mismanaged the assets of Roux and Associates by diverting fees collected for the corporation to other personal and third party accounts and had breached his fiduciary duty owed to the corporation and to Dr. Eckert. Dr. Eckert further alleged Dr. Roux’s self-dealings had caused direct loss to him.
 

 Defendants filed an exception of no right of action claiming Dr. Eckert did not have a right to individually pursue claims against defendants. The trial court denied the exception, but this Court granted writs and ruled the no right of action should have been granted as to plaintiffs individual claims of breach of fiduciary duty, self-dealing and mismanagement. This Court explained that such claims were properly raised in a shareholder’s derivative action and instructed the trial court to allow plaintiff to amend his petition. This Court maintained plaintiffs individual claim for defendants’ refusal to purchase or redeem his stock.
 
 Eckert v. Roux,
 
 00-C-66 (La. App. 5 Cir. 2/24/00), unpublished writ. Plaintiff subsequently amended his petition to assert a shareholder’s derivative claim for breach of fiduciary duty.
 
 [4]
 
 In his amended petition, plaintiff again asserted individual claims for breach of fiduciary duty, mismanagement and self-dealing, which were again dismissed by the trial court pursuant to defendants’ subsequent exception of no right of action.
 

 The matter proceeded to trial in July 2009. At trial, plaintiff made it clear that he was not making a claim for redemption of his stock. Rather, plaintiff explained his claim was for his share of accounts receivable and 50% of revenues generated by Roux and Associates that he did not receive while employed by Roux and Associates. The trial court concluded plaintiff failed to prove defendant exercised gross negligence or a careless disregard for the best interest of the corporation or its shareholders and dismissed all plaintiffs claims.
 

 Issues
 

 Plaintiff claims the trial court was clearly wrong in denying his claims, both his individual claims and his shareholder derivative claims, against Dr. Roux for breach of fiduciary duty because the evidence was uncontroverted. He maintains Dr. Roux admitted diverting the corporation’s funds for personal gain to the detriment of the corporation and its shareholders. He further contends the trial court erred in applying a negligence standard in determining there was no breach of fiduciary duty.
 

 Law & Analysis
 

 Plaintiffs individual claims for breach of fiduciary duty were dismissed pre-trial in July 2000, when the trial court granted defendant’s exception of no right of action
 
 *640
 
 to plaintiffs second supplemental and amending petition, and his shareholder’s derivative claims were dismissed in August 2009, after a trial on the merits.
 

 In their appellee brief, defendants assert the dismissal of plaintiffs individual claims is not properly before this court because the claims were dismissed in 2000 and plaintiff failed to appeal the ruling, and plaintiff failed to | (¡mention the 2000 ruling in his motion to appeal. Defendants further assert the issue regarding plaintiffs right to assert an individual claim for breach of fiduciary duty was previously decided in this Court’s February 24, 2000 writ disposition, which serves as law of the case.
 

 We do not find plaintiff is precluded from challenging the interlocutory judgment of July 2000 granting defendants’ exception of no right of action relating to his individual claims for breach of fiduciary duty in the present appeal. Additionally, we do not find our prior writ disposition constitutes law of the case. Our February 2000 writ disposition, stating that plaintiff did not have an individual right of action, was based on plaintiffs original and first supplemental and amending petitions. Subsequent to our writ disposition, plaintiff amended his petition. Therefore, we will review the trial court’s July 2000 ruling dismissing plaintiffs individual claims as well as the August 2009 ruling denying plaintiffs shareholder’s derivative claims.
 

 Individual Claim for Breach of Fiduciary Duty
 

 Under La. R.S. 12:91, officers and directors of a corporation stand in a fiduciary relation to the corporation’s shareholders as well as to the corporation itself. However, it is well-established that a shareholder of a corporation generally does not have a right to sue personally for alleged losses sustained by the corporation due to mismanagement and/or a breach of a fiduciary duty. Rather, a shareholder may only sue to recover losses to a corporation resulting from mismanagement and/or a breach of a fiduciary secondarily through a shareholder’s derivative suit. In a derivative suit, the shareholder is only a nominal plaintiff and the recovery is for the corporation.
 
 Lawly Brooke Burns Trust v. RKR, Inc.,
 
 96-1231, p. 8 (La.App. 1 Cir. 3/27/97), 691 So.2d 1349, 1353.
 

 If the breach of fiduciary duty causes a direct loss to the shareholder, with no loss to the corporation, a shareholder may have the right to pursue an individual claim for breach of fiduciary duty to the corporation. However, if the alleged loss is the same that would be suffered by other shareholders, the loss is considered to be indirect and the shareholder does not have a right to sue individually.
 
 Lawly Brooke Burns Trust v. RKR, Inc., supra.
 

 Plaintiff asserts he suffered a direct loss as the result of Dr. Roux’s breach of fiduciary duty. He claims the corporation did not suffer the loss but rather only he suffered a loss. As such, he maintains he has an individual right to sue. Plaintiff relies on
 
 Wilson v. H.J. Wilson Co., Inc.,
 
 430 So.2d 1227 (La.App. 1 Cir.1983),
 
 writ denied,
 
 437 So.2d 1166 (La.1983), in support of his position that he has an individual right of action against defendants. Wilson is distinguishable from the present case.
 

 In
 
 Wilson,
 
 a shareholder in a family corporation claimed a breach of fiduciary duty because of an allegedly fraudulent transfer to the corporation’s principal stockholder of shares that actually belonged to the plaintiff. The plaintiff sought recovery of the shares or the value thereof. The court determined the plaintiff had a right of action to sue individually for his alleged loss, which was personal to him and not suffered by the corporation.
 

 
 *641
 
 In the instant case, the losses asserted in plaintiffs individual claims were indirect in nature. Plaintiff alleged fees generated and owed to the Roux and Associates were diverted from the corporation thereby reducing monies owed to him by the corporation. He asserted he was entitled to 50% of the corporation’s revenue based on his stock ownership. The alleged loss of revenue was suffered not only by plaintiff but by the corporation. Thus, plaintiff had no right of action in his individual capacity to bring a claim against defendant. Therefore, we find |sthe trial court properly granted defendants’ exception of no right of action as it pertained to plaintiffs individual claims for mismanagement and breach of fiduciary duty.
 

 Shareholder’s Derivative Claim for Breach of Fiduciary Duty
 

 As previously stated, a director or officer of a corporation owes a fiduciary duty to the corporation and its shareholders. The fiduciary is required to perform his duties in good faith and with diligence, care, judgment, and skill which an ordinarily prudent man would exercise under similar circumstances in a like position. A director or officer cannot be held personally liable to the corporation or its shareholders unless he acted in a grossly negligent manner or acted in reckless disregard to the best interests of the corporation or its shareholders. La. R.S. 12:91. The fiduciary cannot take advantage of his position for his personal benefit to the detriment of the corporation or its shareholders.
 
 Thornton ex rel. Laneco Const. Systems, Inc. v. Lanehart,
 
 97-2871 (La. App. 1 Cir. 12/28/98), 723 So.2d 1127, 1131,
 
 writ denied,
 
 99-177 (La.3/19/99), 740 So.2d 115.
 

 The trial court found plaintiff failed to prove Dr. Roux exercised gross negligence or careless disregard for the best interest of Roux and Associates and/or its shareholders. We do not find the trial court was manifestly erroneous in its ruling.
 

 The standard of review by an appellate court of a district court’s findings of fact is well known. The district court’s factual findings may not be set aside absent manifest error or unless they are clearly wrong. Where there is a conflict in the testimony, inferences of fact should not be disturbed upon review, even though the reviewing court may feel that its own evaluations and inferences are as reasonable. In order to reverse a district court’s determination of a fact, a reviewing court must review the record in its entirety and (1) find a reasonable factual basis does not exist for the finding, and (2) further determine the record establishes the fact finder is clearly wrong or manifestly erroneous. The issue to be resolved by the reviewing court is not whether the fact finder was right or wrong, but whether the fact finder’s conclusion was a reasonable one.
 
 Garrity v. St. Paul Fire & Marine Ins. Co.,
 
 07-965, p. 5 (La.App. 5 Cir. 4/15/08), 984 So.2d 900, 903-04,
 
 writ denied,
 
 08-1051 (La.8/29/08), 989 So.2d 106.
 

 At trial, Dr. Roux testified that plaintiff served as the secretary of Roux and Associates for a period of time during which he kept minutes of the shareholders’ meetings and assisted in running the corporation. He explained that plaintiff later served as the vice president. During his testimony, plaintiff admitted he served as secretary of the corporation and kept minutes of the meetings, but stated he did not know where the minutes were. Plaintiff further stated he did not hold any officer position in the corporation after 1976. On cross-examination, plaintiff admitted he may have been considered the vice-president of Roux and Associates, but stated he did not consider himself a director or officer. He
 
 *642
 
 explained Dr. Roux exclusively handled the corporation’s business affairs.
 

 Dr. Roux testified an employment agreement, which automatically renewed each year, spelled out the terms of compensation to be paid to him and Dr. Ec-kert. Dr. Eckert testified he believed the profits of Roux and Associates were to be divided 50/50 between him and Dr. Roux. He explained his belief was based on what he was told by Dr. Roux and Mr. Buck-man, Roux and Associates’ accountant, but stated the agreement was not in writing.
 

 Dr. Roux explained he handled most of the administrative duties of the corporation and the shareholders approved a $10, 000/year director’s fee, which he never took. Dr. Roux further explained that he took less compensation or income from the corporation because he did not need it and he did not think the “good | inyears” would last. He stated Dr. Eckert was paid approximately $2.2 million more than he was, despite the fact Dr. Roux was generating 50% more fees than Dr. Eckert. Mr. Kushner, plaintiffs expert CPA, corroborated that Dr. Eckert received more money than Dr. Roux from the corporation.
 

 Dr. Roux testified that Roux and Associates entered into a contract with JMS for billing and collection of its fees. He stated Roux and Associates was JMS’s sole client and that it took six and a half percent of the fees collected. Dr. Roux testified he was not an officer, director, shareholder or employee of JMS. Conversely, Dr. Eckert testified JMS was run by defendant and a person by the name of Lance Greenwald.
 

 Dr. Roux testified JMS only paid him and Dr. Eckert twice a year and, therefore, large amounts of money accrued. He explained JMS invested the money it held for Roux and Associates by loaning money to new doctors and making loans for real estate adventures. Dr. Roux stated he had to approve the loans but that the terms of the loans were negotiated by JMS. Although most of the loans were repayed, Dr. Roux admitted some of the loans were not, which forced the corporation to write off the bad debt. Dr. Roux explained that some of the loan repayments were made directly to Roux and Associates and did not pass through JMS. Dr. Roux testified Dr. Eckert was aware of the investments and that some of the loans were discussed directly with him. He stated plaintiff made $400,000 off of one loan. Dr. Roux further stated Dr. Eckert never objected to the investments.
 

 On the other hand, Dr. Eckert testified he was never advised JMS held and invested money owed to Roux and Associates. He stated he was not aware money collected by JMS was being used to pay the expenses, debts and investments of Dr. Roux. However, Dr. Eckert admitted that he himself had received loans from JMS on occasion. On those occasions, Dr. Eckert stated he dealt with Dr. Roux and/or | t1Mr. Greenwald with JMS. Dr. Eckert testified he believed the money for his loan belonged to Roux and Associates. Dr. Ec-kert stated he had never reviewed the books or records of JMS while he was employed by Roux and Associates but stated he may have seen JMS’s tax return. Dr. Roux testified Dr. Eckert met with the accountant for Roux and Associates annually and that Dr. Roux told the accountant to disclose any and all information requested by Dr. Eckert. Dr. Roux explained he did not have any contact with the accountants for JMS.
 

 Dr. Roux denied ever co-mingling funds belonging to Roux and Associates with other companies he owned. He also denied he diverted funds from Roux and Associates for his own personal use. Dr. Roux explained an attempt to recoup a particularly bad loan totaling $1.3 million that had been made to Ed Moore for the
 
 *643
 
 development of certain real estate. When Mr. Moore failed to pay, Roux and Associates repossessed the real estate lots. After discussing the matter with Dr. Eckert, they formed a separate corporation, Brain-tree, to develop the lots in an attempt to recoup the money Roux and Associates had loaned.
 

 Despite plaintiffs allegation that Dr. Roux diverted funds from Roux and Associates for his own benefit and to the detriment of the corporation, we cannot say the trial court was clearly wrong in concluding plaintiff failed to carry his burden of proof. The record shows Roux and Associates may have lost money in certain investments it made. There was conflicting testimony between Dr. Eckert and Dr. Roux as to whether Dr. Eckert knew and participated in the investments. The trial court was forced to make a credibility determination and obviously found Dr. Roux more credible than Dr. Eckert. Based on the record, we find the trial court’s conclusion that the evidence failed to prove Dr. Roux acted grossly negligent or in careless disregard for the best interest of the corporation was reasonable.
 

 | ^Defendants request this Court to award damages for a frivolous appeal; however, defendants failed to cross-appeal or answer the appeal. As such, we are precluded from considering defendants’ request. La.C.C.P. arts. 2082 and 2133;
 
 Vicknair v. St. James Parish School Bd.,
 
 06-381 (La.App. 5 Cir. 10/31/06), 945 So.2d 116, 119.
 

 For the reasons stated above, the judgment in favor of defendants dismissing plaintiffs claims against defendants is affirmed at appellant’s cost.
 

 AFFIRMED.
 

 [1]
 

 . The record shows Dr. Eckert was offered an additional share of stock in 1974 but, according to Dr. Roux, he never paid for the share so his total shares of stock remained at 49.
 

 [2]
 

 . The record shows Dr. Eckert filed an unrelated lawsuit in April 1990 for the dissolution of the corporation and a demand for an accounting.
 

 [3]
 

 .Dr. Roux explained that plaintiff’s stock was not redeemed upon his resignation from the corporation because he violated the non-compete clause of the stock redemption agreement by going to work with a competing anesthesiology group the same month he resigned.
 

 [4]
 

 . This amending petition was plaintiff’s second supplemental and amending petition. Plaintiff first amended his petition prior to this Court February 24, 2000 writ disposition.