SUSAN M. CHEHARDY, Judge.
LThis appeal concerns whether the trial court erred in failing to find the managing member of a limited liability company personally liable for corporate debts. We affirm the trial court’s determination that the corporate veil may not be pierced.
FACTS
Bottom Line Equipment, L.L.C. (hereafter “Bottom Line”) leased three pieces of construction equipment to BZ Equipment, L.L.C. (“BZ”) between Api*il 2007 and June 2007. In November 2008 BZ ceased doing business, leaving its debt to Bottom Line unpaid.
Bottom Line filed suit against BZ, seeking money owed under the terms of the rental agreements, repair expenses for damage to the equipment, and loss of rent during the time it took to repair the equipment. Bottom Line also named as defendants the members of the BZ limited liability company, John Bodilly and Darin Zech. Bottom Line sought to pierce the corporate veil on the ground that BZ was the alter ego of the company’s members and, hence, judgment should be rendered against them individually.
IsPrior to trial, Bottom Line dismissed its claims against Zech without prejudice due to lack of service.
At trial the testimony established that John Bodilly and Darin Zech, both residents of Wisconsin, formed BZ Equipment, L.L.C., a limited liability company, in Wisconsin in 2005. Bodilly is a CPA who had done tax returns for Zech; Zech worked in the construction industry. Bo-dilly invested $40,000 in the company and was managing member; Zech invested $10,000 and was participating member. They intended for BZ to go into the business of demolition and debris removal in Wisconsin. After Hurricane Katrina, however, they decided to focus on demolition and debris removal in Louisiana. Zech came to Louisiana, while Bodilly remained in Wisconsin. BZ had a Samsung excavator, two freight liner trucks, as well as a tractor and trailer.
In Louisiana BZ made applications for an occupational license, payroll taxes, and so on. Bodilly handled the paperwork from Wisconsin; Zech was in Louisiana to perform day-to-day operations. Zech went to Bottom Line in December 2006 to lease some heavy machinery. BZ first had to submit a credit application to Bottom Line. The application form was faxed to Bodilly in Wisconsin; Bodilly completed the form, signing his name with the title “Managing Member,” and faxed it back to Bottom Line. The application was accepted.
*635 In April 2007 BZ leased a Lugong loader for a week or two; the rent was paid, and the Lugong was returned to Bottom Line in due course with no problems. BZ also leased a Caterpillar 320C excavator and then a Kobelco 160 excavator with pulverizer. The Caterpillar was leased for 10 weeks, and the Kobelco was leased for a little more than a week.
Bottom Line eventually repossessed the Caterpillar because BZ failed to make the lease payments. After recovering the Caterpillar, Bottom Line found it |4had extensive damage that included broken windows and destruction of doors, among other things. The damage went beyond normal wear-and-tear and the machine could not be rented to another customer until it was repaired. The Caterpillar was out of service for approximately two months while it was repaired. Similarly, when BZ returned the Kobelco equipment it was damaged, although less extensively than the Caterpillar. Bottom Line made claims against BZ’s insurer, but the claims were denied. BZ never paid the repair invoices or the balance of the rentals due on the machines.
Bodilly testified that while BZ was operating in Louisiana, he and Zech formed two additional companies. Louisiana Environmental Reclamation (“LER”) was formed so they could get a bank loan to purchase a concrete-crusher machine, which was used by BZ. By the time of the trial, both BZ and LER had ceased doing business.
In April 2007 Bodilly and Zech formed Williams Concrete, L.L.C., with a man from St. Bernard Parish who supposedly had local contacts to sell crushed concrete. The expected sales did not materialize, and Williams Concrete also went out of business.
Bodilly testified that BZ had a difficult time collecting accounts receivables, which ultimately led to the company’s insolvency. Although the equipment BZ owned eventually was sold, the proceeds were paid to the bank that had a secured interest in the equipment. In addition, Bodilly repeatedly lent his own money to BZ to repay the bank loan. He did this by writing a personal check to BZ, which was deposited in BZ’s checking account, then checks were written from BZ’s account for loan repayment. Bodilly testified he never used BZ’s account to pay his personal expenses or for non-company-related payments.
|aBodilly testified that LER generated some revenue, but it was not enough to pay its debts.
Neither the credit agreement signed by Bodilly, nor the individual rental agreements for the various pieces of equipment, contained any provision making Bodilly or Zech personally liable for BZ’s debt to Bottom Line. Bodilly signed all documents related to BZ as “managing member.”
Bottom Line directed all invoices for payments due by BZ to BZ Equipment. All invoices and expenses of BZ Equipment were paid from BZ’s bank account at a Wisconsin bank, Middleton Community Bank.
The district court found in favor of Bottom Line and awarded damages of $81,634.24, plus interest and costs, against BZ only. The court dismissed the claims against Bodilly.
In written reasons for judgment, the court made the following conclusions:
Plaintiff in this case has failed to carry his burden to pierce the corporate veil either to Mr. Bodilly personally or Mr. Bodilly’s other corporations. First, plaintiff has failed to establish that BZ Equipment engaged in fraud or deceit in an attempt to defraud its creditors. Second, plaintiff has failed to establish that BZ was simply the alter ego of Mr. *636 Bodilly and the corporation was indistinguishable from its shareholders. Third, plaintiff has failed to establish that BZ Equipment and Mr. Bodilly’s other ventures operated as a single business entity. Furthermore, plaintiff cannot pierce the corporate veil of these separate corporations because they were not named as parties in this litigation.
Bottom Line appeals. It does not challenge the damages awarded, but raising the following assignments of error:
(1) The trial court misapplied applicable law in determining whether to pierce the corporate veil of BZ Equipment, L.L.C.;
ls(2) The trial court erred in not considering the “single business entity” theory when determining whether to pierce the corporate veil and hold an individual member liable;
(3) The trial court erred in dismissing Bodilly and its determination that BZ Equipment, L.L.C.’s corporate veil should not be pierced.
LAW AND ANALYSIS
Juridical persons, such as corporations and limited liability companies, are distinct from their members. La. C.C. art. 24. Generally, members of a limited liability company (“LLC”) are not personally liable for the debts, obligations and other liabilities of the LLC to third parties, and an LLC member is not a proper party in any proceeding against the LLC. La. R.S. 12:1320(B). However, third parties can bring claims against a member for “any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against such person because of any fraud practiced upon it by him.” La. R.S. 12:1320(D).
Under certain circumstances, therefore, a court can pierce the corporate veil in order to reach the “alter ego” of the corporate member and hold the corporate member liable for the debts of the corporation. Peyton Place Condominium Associates, Inc. v. Guastella, 08-365, p. 25 (La.App. 5 Cir. 5/29/09), 18 So.3d 132, 149. The theory of piercing the corporate veil applies to limited liability companies and is not limited to corporations. ORX Resources, Inc. v. MBW Exploration, LLC, 09-662, p. 7 (La.App. 4 Cir. 2/10/10), 32 So.3d 931, 935, writ denied, 10-530 (La.5/7/10), 34 So.3d 862.
Due to the beneficial role of the corporate concept, the limited liability attendant to corporate ownership should be disregarded only in exceptional circumstances. |7... Before the corporate entity is disregarded on the basis it is simply the alter ego of the member, proof of fraud or deceit is usually required. The corporate entity may also be disregarded when the individualities of the corporation and member cease to exist. [Citations omitted.]
Prasad v. Bullard, 10-291, p. 7 (La.App. 5 Cir. 10/12/10), 51 So.3d 35, 40.
When a party seeks to pierce the corporate veil, the totality of the circumstances is determinative. The Louisiana Supreme Court has identified five non-exclusive factors to be used in determining whether to apply the alter ego doctrine: (1) commingling of corporate and shareholder funds; (2) failure to follow statutory formalities for incorporating and transacting corporate affairs; (3) undercapitalization; (4) failure to provide separate bank accounts and bookkeeping records; and, (5) failure to hold regular shareholder and director meetings. The involvement of a sole shareholder in a corporation is insufficient alone to establish a basis *637 for disregarding the corporate entity. In determining whether to pierce the corporate veil to impose contractual or legal obligations on an individual, competing policies supporting the recognition of a separate corporate existence and those justifying piercing the veil must be weighed to determine if there is some misuse of the corporate privilege or other justification for limiting it under the facts of a particular situation. A trial court’s finding that the corporate entity should be disregarded is a finding of fact which is subject to the manifest error standard of review. [Citations omitted.]
Prasad v. Bullard, 10-291 at pp. 7-8, 51 So.3d at 40-41, citing Town of Haynesville, Inc. v. Entergy Corp., 42,019, p. 8 (La.App. 2 Cir. 5/2/07), 956 So.2d 192, 197, writ denied, 07-1172 (La.9/21/07), 964 So.2d 334.
The trial court stated in its Reasons for Judgment that there is no evidence John Bodilly used the corporate form to perpetrate fraud, although he may have made questionable and/or poor business decisions. The court found that Bodilly’s actions of writing personal cheeks to BZ that were deposited into BZ’s account, then writing checks from the BZ account to company debts, was essentially an | finterest-free loan and did not constitute sufficient grounds to find Bodilly disregarded the corporate entity.
The trial court also found no merit to Bottom Line’s claim that BZ failed to follow statutory formalities for incorporating and transacting corporate affairs by failing to properly register in Louisiana. The court noted that BZ obtained the proper occupational and local licenses, registered for tax purposes, filed tax reports and returns, and obtained all permits it believed were necessary to transact business in Louisiana. Further, at trial Bottom Line failed to introduce proper evidence to establish that BZ was not authorized to do business in Louisiana.[1]
The trial court further found there was no evidence that BZ was under-capitalized. At startup the company owned one piece of equipment and had $50,000 in cash. During the course of its operations the company received additional infusions of capital in the form of a $272,912.81 bank loan and a personal loan from Bodilly of $195,506.34. The balance sheet showed only $16,877.44 in revenue and one piece of equipment worth approximately $50,000. The court found that raised a question as to competency of the company’s business practices, but it did not establish that BZ was inadequately capitalized.
In addition, the trial court found no evidence that Bodilly and BZ Equipment failed to maintain separate bank accounts and bookkeeping records.
Finally, with regard to whether the corporation failed to hold regular meetings of shareholders and directors, the court noted there was no testimony to establish such. The court found, however, Bodilly’s testimony that he and Zech regularly discussed business operations and that they met informally sufficed to |3satisfy the spirit of the requirement, because this was a small, closely-held corporation in which they were the only members.
*638 Bottom Line contends the trial court erred in limiting its analysis to the five factors set out in the Town of Haynesville case. Bottom Line asserts the court should have looked at the “totality of the circumstances” to determine that Bodilly was using the corporate form to defraud creditors. As examples, Bottom Line points to failure to follow statutory formalities for incorporation; one corporation causing the incorporation of another; commingling of corporate and shareholder funds; diversion of corporate assets; common use of corporate equipment; one corporation financing the other corporation; common payment by one corporation of the other corporation’s salaries or financial losses; unclear allocations of profits and losses; excessive fragmentation of corporate business.
Further, Bottom Line argues that the trial court erroneously separated its “alter ego” analysis into (1) the Town of Haynes-ville factors and (2) the single entity doctrine. Bottom Line contends the trial court erred in dismissing the single entity theory' on the basis that Bottom Line failed to sue the other corporations or to seek to hold the other corporations liable for BZ’s debts. Bottom Line argues piercing the corporate veil is applicable to situations in which the shareholders are using the corporate forms from other corporations to defraud creditors.
In support of its arguments, Bottom Line cites the following testimony:
(1) Bodilly sent correspondence to Bottom Line on January 26,' 2008, attaching BZ’s 2007 Profit and Loss Statement and Balance Sheet, asserting that BZ “was in very poor financial condition” and “unable to pay.”
(2) Bodilly represented to another company in early 2008 that BZ was “insolvent.”
lm(3) Bodilly did not remember whether he registered with the Louisiana Secretary of State’s for authority to do business in Louisiana.
(4) Despite representations to its creditor in January 2008 that BZ was “insolvent” and “unable to pay,” BZ continued in business until November 2008;
(5) Despite representations to its creditor in January 2008 that BZ was “insolvent” and “unable to pay,” Bodilly filed a UCC Financing Statement against BZ for “all business assets including but not limited to cash, accounts receivables and equipment” on May 30, 2008.
(6) With regard to BZ’s reporting $869,962.14 in expenses, but only $16,877.44 of total revenue, Bodilly testified that during the time BZ contracted with Bottom Line the Williams Concrete company earned revenue for work produced by equipment leased or owned by BZ.
(7) Bodilly incorporated LER through the Louisiana Secretary of State’s office in 2008, and LER performed work identical to the work performed by BZ and used equipment owned by BZ to perform the work, at no compensation to BZ.
(8) LER operated on the same property in St. Bernard Parish where BZ operated in 2007 and 2008.
(9) Bodilly stated LER was started because BZ could not qualify for a bank loan, while the new company could qualify for a loan.
(10) Although Bodilly asserted LER is now also insolvent and last performed work in November 2009, he admitted he filed a UCC Financing Statement against the company’s asserts, accounts receivable and equipment in December 2009.
(11) Bodilly admitted the companies paid rent for the St. Bernard Parish prop *639 erty where work was performed through November 2009 and denied any Inpayments of rent thereafter. Nevertheless, Bodilly admitted the equipment owned by BZ is still present on the St. Bernard Parish property.
(12) Middleton Community Bank in Wisconsin lent BZ $272,912.81, and Bodilly personally loaned BZ $195,506.34 in 2007. Yet BZ had only $16,877.44 in revenue and equipment, one piece of equipment worth $50,000.
(13) The Middleton Community Bank loan to BZ still maintains a balance, which Bodilly continues to pay with his personal funds by writing a check to BZ and then having BZ write a check to Middleton.
(14) LER leased equipment from Scott’s Equipment and has been sued for failing to pay in the same style as this litigation.
Bottom Line asserts all the above factors justify piercing the corporate veil to hold Bodilly personally liable. Bottom Line argues it presented evidence that Bo-dilly used BZ and the other corporations to commingle assets, to systematically divert and hide assets, to improperly allocate profits and losses, and to defraud BZ’s creditors. Bottom Line avers the trial court erred because it held these maneuvers need not be considered because the trial court found the “single business entity theory” inapplicable where neither of the other corporations were made defendant in this suit.
In conclusion, Bottom Line asserts the trial court’s refusal to consider evidence demonstrating that various business entities were used to defraud creditors was a legal error, and such should have been considered in determining “whether the veil should be pierced to hold the members orchestrating such fraud personally liable for the corporate debts.”
Where there is a conflict in the testimony, inferences of fact should not be disturbed upon review, even though the reviewing court may feel that its own evaluations and inferences are as reasonable. In order to reverse a district court’s determination of a fact, a reviewing court must | ^review the record in its entirety and (1) find a reasonable factual basis does not exist for the finding, and (2) further determine the record establishes the factfinder is clearly wrong or manifestly erroneous. The issue to be resolved by the reviewing court is not whether the factfinder was right or wrong, but whether the factfinder’s conclusion was a reasonable one.
Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. When findings are based on determinations regarding the credibility of witnesses, the manifest error or clearly wrong standard demands great deference to the trier of fact’s findings because only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
Garrity v. St. Paul Fire & Marine Ins. Co., 07-965 (La.App. 5 Cir. 4/15/08), 984 So.2d 900, 904, writ denied, 2008-1051 (La.8/29/08), 989 So.2d 106.
In response, Bodilly asserts Bottom Line cannot show on appeal that the trial court’s judgment was unreasonable, considering the record in its entirety. With respect to the factors to be considered in determining whether there is sufficient evidence to support a finding that a company is merely an alter ego of an individual, so as to hold the individual liable for the company’s debts.
Bodilly contends the trial court’s judgment is reasonable based upon the evi *640 dence. Bodilly asserts there is no evidence in the record to support a finding that the companies in which Bodilly had an interest integrated their resources and operated to achieve a common business purpose. The mere fact of Bodilly’s having an interest in several companies is insufficient to warrant disregarding the corporate entities.
Bodilly further argues that Bottom Line’s assertion that Williams Concrete benefited from revenue for debts and expenses incurred by BZ is incorrect. Rather, Bodilly points to his testimony that he did not make money through the Williams Concrete venture.
| ,Jn addition, Bodilly asserts that BZ did not incur expenses for another company to receive payment; rather, BZ was unable to collect on its outstanding accounts receivable. BZ had incurred debts to perform work, but was not paid for the work performed, and that is what resulted in BZ’s ultimate insolvency.
We find no manifest error in the trial court’s determinations that Bottom Line failed to establish that Bodilly engaged in fraud or deceit in an attempt to defraud creditors, that Bottom Line failed to establish that Bodilly was merely the alter ego of BZ, and that Bottom Line failed to establish that the other companies in which Bodilly had an interest operated as a single entity.
Reviewing the evidence, we find no manifest error in the trial court’s obvious assessment that Bodilly’s testimony was credible, and in the court’s determination that neither the alter ego nor single business enterprise theories apply in this case. Hence, we affirm the judgment that dismissed Bottom Line’s claims against Bodilly-
For the foregoing reasons, the judgment is affirmed. Costs of appeal are assessed against the appellant, Bottom Line Equipment, L.L.C.

AFFIRMED

. Counsel for Bottom Line attempted to introduce testimony about a search of the records of the Louisiana Secretary of State, but the court excluded the testimony on the basis of hearsay. The court upheld the defense’s objection that Bottom Line should have obtained a certificate from the Secretary of State as to any information or lack of information in the records, rather than attempting to introduce evidence from an individual connected with Bottom Line who had researched the Secretary of State's records.