1EDWARD A. DUFRESNE, JR., Chief Judge.
This is an appeal by American National General Insurance Company, defendant-appellant, from certain items of damages awarded by a jury to John and Ann Higgins and their son, Michael, in this automobile accident case. For the following reasons we amend the judgment to eliminate the awards of future physical and mental pain and suffering to John and Ann Higgins. In all other respects the judgment is affirmed.
The facts of the accident are not in dispute. At about 10 PM on the night in question, John Higgins was driving his family home from a high school basketball game when a second car ran a stop sign and struck the Higgins’ vehicle in the right front fender area. John, his wife Ann, their son Michael, and three other children in the car suffered injuries of varying severity.
In the case of Michael, he did not exhibit any serious symptoms immediately after the accident. However, four and one-half months later he began to experience chest and stomach pains and uncontrollable vomiting. | Jt was then discovered that he had a torn diaphragm and that his stomach had encroached into the chest cavity. It was also discovered that the stomach had developed small holes and was leaking gastric fluids into the chest cavity causing massive infection there. These, conditions *1081 required several weeks of hospitalization and months of post-hospital care, eventually costing $123,000 in medical bills.
After a trial the jury rendered a verdict which included the following contested items of damages:
[[Image here]]
American General’s motions for JNOV and new trial were denied, and this appeal followed. The plaintiffs also cross-appealed.
Six assignments of error are advanced by American General, the last three of which seek a reduction in the amount of damages. One assignment is urged by plaintiffs, in which they seek an increase in the amount of damages.
We begin with American General’s first allegation of error which concerns admission of testimony by Ann and John Higgins relating to the medical treatments undergone by their son Michael. In pretrial | -¡proceedings American General sought to exclude testimony by Ann and John relating to any pain and suffering they may have experienced in witnessing their son’s suffering during the later hospitalization and recovery. This effort eventually resulted in the following supreme court order:
The motion is granted, and the trial court is ordered to exclude any evidence at trial relating to plaintiffs’ mental anguish at witnessing their son’s operation, which occurred months after the accident at issue. See La.Code Civ. P., art. 2315.6; Trahan v. McManus, 97-1224 (La.3/2/99), 728 So.2d 1273.
The clear rationale of this ruling was to prevent testimony of the parents’ suffering in watching their son’s pain resulting from his post-accident surgery and recovery some five months after the accident because damages for this type of parental post-accident pain are simply not recoverable under La. Civ Code, Art. 2315.6.
However, Ann’s testimony at issue here was not directed to her suffering, but was instead her rendition of what she saw her son experiencing in the way of his compen-sable pain and suffering. While the testimony was admittedly dramatic, and perhaps made more so by Ann’s clinical knowledge as a nurse, it was nonetheless directed to what she observed Michael undergoing, and not what she was experiencing as a mother. The same is true for John’s testimony on this point. As such, the testimony was in compliance with the supreme court order and was otherwise probative of a recoverable element of dam *1082 ages suffered by Michael. We therefore reject this argument.
American General’s second assignment is also without merit. At the conclusion of the defendant’s case, plaintiffs moved for a directed verdict on the issue of causation as to Michael’s later discovered torn diaphragm. RThe only evidence bearing on this point was the testimony of Michael’s treating physicians, all of whom agreed that the accident was the cause of the injury. Although all of the doctors agreed that late developing symptoms of a diaphragm hernia are unusual, all of them also said that such a phenomenon was known in the medical literature. They also agreed that this condition is known to be caused by a blunt trauma to the abdomen such as that experienced by seat belt injuries. They ruled out a congenital defect in Michael’s case, and none of them were aware of any other injury to the teenager that might have been severe enough to cause the hernia.
The defendant produced no witness to controvert the above testimony, nor did it establish that Michael had otherwise suffered any trauma in any way compatible with this type of injury. Its only argument here is that because the treating physicians all admitted that the late occurring symptoms were rare, the issue of causation should have gone to the jury. It also argues that the trial judge applied the wrong standard in assessing plaintiffs’ motion.
The standard applicable to motions for directed verdicts is set forth in Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713 (La.1986), as follows:
A directed verdict should only be granted when the facts and inferences point so strongly in favor of one party that the court believes reasonable people could not reach a contrary verdict. It is appropriate, not when there is a preponderance of evidence, but only when the evidence overwhelmingly points to one eonclusion.(at 718)
Based on the above expert testimony the trial judge granted the motion and stated from the bench that:
Regarding the motions as presented to the Court, this Court finds |Bthat the defendant clearly produced no expert medical evidence that the automobile accident of January 3, 1997 did not cause the diaphragmatic hernia. As the test of medical causation is to a reasonable medical probability, the evidence produced here by the defendant fails to reach even a prima facie level. Therefore, the Court concludes that the evidence regarding medical causation overwhelmingly points to a conclusion favoring plaintiffs.
More importantly, the Court opines that reasonable people would not agree otherwise.
Thus, while the judge noted that the defendant had not presented any evidence on an alternative causation, much less any such evidence which might rise to a prima facie case, that was not the standard which he eventually used to decide the motion. Instead he stated the proper standard, which is that quoted from Hastings, supra. We agree with the trial judge that the evidence here was so overwhelmingly in favor of plaintiffs’ case as to causation that reasonable people could not have reached a contrary conclusion. We therefore reject this assignment of error.
The third issue concerns the inadvertent showing to the jury of several seconds of a videotape of Michael’s surgical incisions and scarring, and the judge’s related ruling excluding testimony by defendant’s expert plastic surgeon as to the surgical amelioration of these scars. As to *1083 the video tape, the defendant was provided with a full copy of it before trial. There was a pre-trial agreement, however, that the tape would not be shown as a motion picture, but rather selected still frames would be used. It was also agreed that no zoom closeups would be used. However, when plaintiffs’ counsel began using the projection equipment some two seconds of the moving version with a few zoom frames were seen by the jury. The defense objected and asked for a mis-trial, but this was denied on grounds that there was no real prejudice resulting from the error.
IfiThe admission or exclusion of evidence is within the discretion of the trial judge, and his rulings will not be disturbed absent an abuse of that discretion. Here we see no such abuse. Indeed, we agree with the trial judge that the brief running of the tape did not prejudice the defense, particularly in view of the fact that it knew that the still frames of the same tape were a part of plaintiffs’ evidence. We therefore reject this argument.
The second alleged problem involving the scarring concerns the exclusion of testimony by a proposed defense plastic surgeon expert on scar correction. This expert was excluded by the trial judge, first, because the defense had not listed him in their pre-trial order and requested his admission only a few days before trial, and second, because he had never examined Michael. Again, the trial judge has wide discretion in excluding testimony from witnesses not listed in pre-trial agreements, and we find no abuse of that discretion in his exclusion of this non-listed expert.
The defendant’s last three assignments of error concern the damage awards to John, Ann, and Michael Higgins, all of which it claims are too high. Plaintiffs for their part assert here that they are too low. The standard of review of damage awards was stated in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993) as follows:
The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion.
As to John, he testified that upon impact a number of windows in the car shattered and he was splattered with glass fragments. He said that they were in his arms, ankles and toes, and one fragment was in his eye, and 17that he had scrapes and bruises elsewhere. He said further that when he looked around in the car there was smoke everywhere and his wife yelled fire. He was unable to get his seat belt off immediately and was fearful for his family. When he finally got out of car his wife reported that he was covered in blood from the cuts. He was taken to the hospital where further examination revealed no life threatening injuries. Several days later an eye specialist determined that his eye was undamaged and he could use his contact lenses again. His only residual problems were that he had to use crutches for two or three weeks because of a bruise to his leg, and he had pain in his chest and ribs for several months. His medical bills were $3,198.
Applying the standard of Youn to these facts we are unable to articulate any reasons why the jury award of $13,500 for past physical and mental pain and suffering is abusively high or low, and so must affirm it. However, as to the award of *1084 $3,600 for future physical and mental pain and suffering, there was simply no evidence to support this award. John has no ongoing physical injuries, and there was no evidence to show that he suffers from any ongoing mental suffering relating to the incident. We therefore vacate the $3,600 award for future suffering.
As to his wife Ann, she struck her head and bruised her abdomen on the seat belt. Her bruised abdomen resolved itself quickly, but her head and scalp were painful to touch for two months. She is a registered nurse and thus aware of the possible injuries which can occur in accidents. She testified that immediately after the accident she thought the car was on fire. When everyone was out of the vehicle, she began checking her children and husband for possible serious injury. She found her husband covered Rin blood from the glass shards, and the children were complaining of various pains. She said that the scene was chaotic and terrifying with ambulances, police and fire trucks everywhere. She also said that she realized that she was going into shock at the scene, and was trying to maintain her composure so she could care for the others.
Although Anris injuries were eventually found not to be life threatening, considering the entirety of the accident scene and her obvious mental suffering in seeing the injuries to her family at that scene we again cannot say that the jury abused its discretion in awarding her $25,000 for past physical and mental pain and suffering. However, as in the case of John, there was no evidence to show that she is still suffering physically or mentally from the accident. We therefore must vacate her award of $10,000 for future physical and mental pain and suffering as well.
The final issue concerns the award to Michael. As previously noted, Michael’s injuries appeared minor immediately after the January accident. However, over the next few months he suffered occasional nausea and vomiting which were attributed to viral infections. Then in May he began to vomit uncontrollably and to experience shortness of breath, and he was taken to the hospital for tests. It was then discovered that his diaphragm had been torn during the accident and a portion of his stomach had intruded into the thoracic cavity. Apparently the muscles of the diaphragm had constricted the stomach protrusion and cut off the blood supply to that area. As a consequence, the stomach tissue died and perforations developed which allowed stomach fluids to seep into the thoracic cavity. This in turn resulted in massive infection of that area and a collapsed lung.
The treating physicians described the treatment as follows. The | ¡¡abdominal cavity was opened, the stomach was repositioned to its normal place, the perforations in the stomach wall were repaired, and the incision was closed. The chest cavity was opened, the lung was re-inflated and the tear in the diaphragm was sewn up. Because of the infection the chest also had to be drained of contaminated fluid and treated with antiseptics. The chest incision was then closed up. He remained in intensive care for about ten days after surgery. The doctors agreed that had Michael not been a healthy teenager, he probably would not have survived.
Unfortunately, the infection was so pervasive that it spread to both incisions, which then had to be re-opened. The doctors testified that to combat this secondary infection they packed the incisions with antiseptic treated gauze. This gauze dressing had to be changed three times a day for about three weeks. The difficulty was that while it was in place the tissue in the incisions would adhere to the gauze, and when it was removed each time Mi *1085 chael would suffer excruciating pain. Upon his release from the hospital, Michael spent another several months recuperating from the surgery. Although he has recovered from the injury, he still has two extensive and disfiguring scars on his torso.
On the above facts the jury awarded $500,000 for past physical and mental pain and suffering, and $100,000 for future physical and mental pain and suffering. Considering the severity of Michael’s condition, the extent of the surgical procedures and the consequent pain occasioned by the changing of the gauze dressings, we are unable to articulate any reasons why the jury award for past damages is an abuse of discretion. As to the future damages, it is evident that the jury sympathized with this teenager’s embarrassment and discomfort with his disfiguring scars as the |inbasis for this award. While it is admittedly on the high side for this type of damages and probably well beyond what this court might have awarded had it been sitting as the jury, we nonetheless are unable to articulate any reasons why it constitutes an abuse of the jury’s wide discretion. We therefore affirm the awards to Michael.
For the foregoing reasons the awards for future damages to John Higgins of $3,600 and to Ann Higgins of $10,000 are hereby set aside. In all other respects the judgment is affirmed.

AFFIRMED IN PART AND REVERSED IN PART.