# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                              NEWS RELEASE #017

FROM: CLERK OF SUPREME COURT OF LOUISIANA


The Opinions handed down on the **15th day of March, 2017**, are as follows:


**BY CLARK, J.**:


2016-CC-1146        DARRIN COULON AND TESS COULON v. ENDURANCE RISK PARTNERS, INC., WEST
                    BANK SURGERY CENTER, L.L.C., AND MARK JUNEAU, M.D. (Parish of Jefferson)

        Accordingly, we reverse the ruling that sustained the Surgery Center's
        exception of prematurity and remand for proceedings consistent with
        this opinion.
        REVERSED AND REMANDED.

SUPREME COURT OF LOUISIANA

No. 2016-CC-1146

DARRIN COULON AND TESS COULON

VERSUS

ENDURANCE RISK PARTNERS, INC., WEST BANK SURGERY
CENTER, L.L.C., AND MARK JUNEAU, M.D.

ON SUPERVISORY WRITS TO THE TWENTY-FOURTH JUDICIAL
DISTRICT COURT FOR THE PARISH OF JEFFERSON

**CLARK, Justice**

This case concerns the pleading requirements of the Louisiana Medical Malpractice Act ["LMMA"], La. R.S. 40:1231.1, *et seq.* The plaintiffs alleged that an infection developed after negligent medical treatment was provided by the defendants. Accordingly, they filed a Request for Medical Review Panel and, subsequently, a lawsuit. We granted the plaintiffs' writ application to determine whether the medical review panel complaint was sufficient to survive an exception of prematurity. For the reasons that follow, we find the brief descriptions of malpractice contained in the complaint are broad enough to encompass the specific allegations contained in the petition for damages. Thus, we reverse the lower courts' grant of the exception of prematurity and remand the matter for proceedings consistent with this holding.

**FACTS AND PROCEDURAL HISTORY**

In late 2011, Darrin Coulon underwent shoulder surgery at the West Bank Surgery Center, (hereinafter "the Surgery Center"), which was performed by Dr. Mark Juneau. Mr. Coulon developed an infection, necessitating several additional surgeries and treatment to resolve. Thereafter, Mr. Coulon and his wife, Tess Coulon, (hereinafter referred to as "the plaintiffs"), filed a *pro se* Request for

Medical Review Panel, (hereinafter "the complaint"), with regard to a claim for medical malpractice arising out of the care and treatment provided by Dr. Juneau and the Surgery Center. In the complaint and with respect to the Surgery Center, the plaintiffs alleged:

> [The Surgery Center] failed to develop, maintain, and enforce proper policies and procedures to prevent surgical infections.
>
> [The Surgery Center is] responsible under the theory of *respondeat superior* for the actions of its employees acting within the course and scope of their employment.

The plaintiffs also filed a Submission of Evidence with their complaint, attaching to it medical records, affidavits of the plaintiffs, and photographs.

The medical review panel made a finding that "[t]he evidence does not support the conclusion that the defendants, Jefferson Orthopedic Clinic [a party not relevant to the instant legal issue], Dr. Mark Juneau, and [the Surgery Center], failed to meet the applicable standard of care as charged in the complaint." In its opinion, the panel explained, in pertinent part:

> 1. There is nothing in the records presented to the panel to review to indicate that [the Surgery Center] and/or its employees deviated from the standard of care.
>
> 2. The center's personnel properly monitored the patient and followed all physician orders in an appropriate and timely fashion. There is no evidence to indicate the facility had failed to maintain proper procedures to prevent surgical infections.

After the panel rendered its opinion, the plaintiffs filed the instant suit for damages against the Surgery Center. In their petition, the plaintiffs alleged the Surgery Center failed to properly train and supervise the nurses who treated Mr. Coulon:

> Defendant, [the Surgery Center], is liable unto petitioners because Darrin Coulon's injuries and damages were proximately and legally caused by the fault, including negligence of [the Surgery

2

Center] and its officers, agents, and/or employees, and those for whom it is legally responsible, including but not limited to, Darrin Coulon's nurses, and/or surgical staff including the following negligent acts of omission and commission, among others, which may be shown at trial:

a. Failure to develop and/or implement and/or enforce adequate policies and procedures to competently prevent and/or treat infection;

b. Failure to insure a sterile surgical environment;

c. **Failure to supervise the nurses who treated Darrin Coulon; and**

d. **Failure to train the nurses who treated Darrin Coulon.**

[emphasis added].

In response, the Surgery Center filed a partial exception of prematurity, arguing the allegations regarding the failure to train and supervise the nurses was premature as the plaintiffs did not allege these claims in their complaint to the medical review panel. The plaintiffs opposed the exception. They contended that the language alleged in the complaint was broad enough to encompass the claims set forth in the petition.

The trial court conducted a hearing and sustained the Surgery Center's exception of prematurity, thereby dismissing the plaintiffs' malpractice action in part. The trial court's judgment provided:

IT IS HEREBY ORDERD, ADJUDGED AND DECREED that [the Surgery Center's] Exception of Prematurity is GRANTED, and plaintiffs' claims alleged in their Petition for Damages at paragraph 104, subsection (c) Failure to supervise the nurses who treated Darrin Coulon and at paragraph 104, subsection (d) Failure to train the nurses who treated Darrin Coulon, are dismissed without prejudice.

The transcript of the hearing reveals the trial court agreed with the Surgery Center's argument that while the language in the petition does not need to be identical to that contained in the complaint, the plaintiffs cannot bring "entirely new theories of liability."

3

The plaintiffs sought supervisory review. The court of appeal denied the writ, stating, in pertinent part:[1]

> In their September 25, 2012 medical review panel request, Relators set forth a general allegation that Respondent was responsible under the theory of respondeat superior for the actions of its employees acting within the course and scope of their employment. Relators did not specify the employees for whom Respondent was responsible under respondeat superior. In their "Submission of Evidence," Relators alleged Dr. Mark Juneau breached his standard of care of Mr. Coulon in various ways while employed with Respondent. The submission of evidence did not brief any argument regarding Respondent's alleged failure to train and/or supervise its nurses. The medical review panel's opinion and reasons found there was nothing presented to indicate that Respondent or its employees deviated from the standard of care. The medical review panel did not specifically address any allegation against Respondent in reference to an alleged failure to train and/or supervise its nurses.
>
> Upon review, we find the dilatory exception of prematurity was properly sustained. A review of the documentation submitted to the medical review panel reveals that Relators did not present sufficient information for the panel concerning the nursing staff to determine whether Respondent was entitled to protection under the Medical Malpractice Act. Thus, we find that Relators failed to first present the claims that Respondent failed to supervise and train the nurses who treated Mr. Coulon, claims that sound in medical malpractice, to the medical review panel. Accordingly, the writ application is denied.

The plaintiffs filed the instant writ application. This court granted the writ to decide whether the exception of prematurity was properly sustained.[2]

## DISCUSSION

Prior to filing suit in a case where medical negligence is alleged, the LMMA requires a medical review panel to be convened. *See* La. R.S. 40:1231.8(A)(1)(a) ("All malpractice claims against health care providers . . . shall be reviewed by a medical review panel"). *See also* La. R.S. 40:1231.8(B)(1)(a)(i)("No action against a health care provider. . . may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel"). The panel is tasked with rendering "an expert opinion as to whether or not the evidence

---

[1] *Coulon v. Endurance Risk Partners, Inc., et al.,* 16-264 (La. App. 5 Cir. 5/18/16), _So.3d _.
[2] *Coulon v. Endurance Risk Partners, Inc., et al.,* 16-1146 (La. 11/7/16), _So.3d_.

supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care." La. R.S. 40:1231.8(G).

"The dilatory exception of prematurity provided in La.Code Civ. Proc. art. 926 questions whether the cause of action has matured to the point where it is ripe for judicial determination." *Moreno v. Entergy Corp.*, 2010-2268 (La. 2/18/11), 64 So. 3d 761, 762–63. In the context of medical malpractice cases, defendant health care providers often use the exception of prematurity when there is a question of whether the claim at issue falls within the definition of medical malpractice, so as to require it to first be brought to a medical review panel. However, the parties in the instant case do not dispute that the claims of "failure to train the nurses" and "failure to supervise the nurses" sound in medical malpractice as defined by La. R.S. 40:1231.1(A)(13). Rather, the Surgery Center raised the exception of prematurity to argue that these claims were new and separate claims from those raised in the complaint. Accordingly, the Surgery Center avers the claims were not first presented to the medical review panel and are properly subject to dismissal as a result.

In order to address this contention and the sufficiency of the plaintiffs' complaint, we turn to La. R.S. 40:1231.8(A)(1)(b), which sets forth the required content of a complaint:[3]

> A request for review of a malpractice claim or a malpractice complaint shall contain, at a minimum, all of the following:
>
> (i) A request for the formation of a medical review panel.
>
> (ii) The name of only one patient for whom, or on whose behalf, the request for review is being filed; however, if the claim involves the care of a pregnant mother and her unborn child, then naming the mother as the patient shall be sufficient.
>
> (iii) The names of the claimants.
>
> (iv) The names of the defendant health care providers.

---

[3] These delineated requirements were added by amendment in 2003. See Acts 2003 No. 961 § 1.

5

(v) The dates of the alleged malpractice.

(vi) A brief description of the alleged malpractice as to each named defendant health care provider.

(vii) A brief description of the alleged injuries.

The instant case asks us to determine whether the plaintiffs satisfied subpart (vi), namely, whether the plaintiffs provided in their complaint a "brief description of the alleged malpractice as to each named defendant health care provider." The Surgery Center argues the plaintiffs' claims regarding failure to train and supervise the nurses were not included in the brief description(s) of the malpractice alleged in their complaint. Conversely, the plaintiffs contend they sufficiently alleged in their complaint that the Surgery Center's act of malpractice *was* the failure to prevent Mr. Coulon's surgical infection under theories of both direct and vicarious liability. This brief description, as alleged by the plaintiffs, encompassed the causes of action that are at issue. For the reasons that follow, we agree.

This court in the pre-amendment case of *Perritt v. Dona,* 2002-2601 (La. 7/2/03), 849 So.2d 56, 64, explained that the medical review panel claim is not a fact pleading which requires the same specificity as a petition in a lawsuit. Rather, "the claim need only present sufficient information for the panel to make a determination as to whether the defendant is entitled to the protection of the Act." *Id.* at 65. We see nothing in the amendment to La. R.S. 40:1231.8(A)(1)(b) that makes the pleading requirement any more onerous. It is still the duty of the medical review panel to specify the health care provider's standard of care and determine thereafter if such standard was breached. *Perritt*, 849 So.2d at 65; La. R.S. 40:1231.8(G). The requirement of a "*brief* description of the alleged malpractice" supports this conclusion and is in line with the history of the LMMA, which favors a layman plaintiff's access to medical expertise as a "filtering" or "pre-screening" process against "frivolous" and "worthless" claims. *Everett v.*

6

*Goldman*, 359 So.2d 1256, 1263 (La. 1978). Thus, the pertinent question posed is whether the claims raised in the complaint contain enough information for the medical review panel to consider and conclude that the Surgery Center was entitled to the protections of the LMMA, as opposed to claims that sound in tort. *Perritt*, 849 So.2d at 65.

For the reasons that follow, we find the plaintiffs' allegations contained in the complaint presented to the medical review panel are broad enough to encompass the failure to train and supervise the nurses who cared for Mr. Coulon. Specifically, we note that the complaint alleged direct liability for the Surgery Center's failure "to develop, maintain, and enforce proper policies and procedures to prevent surgical infections" as well as vicarious liability under the theory of "*respondeat superior* for the actions of its employees." The underlying injury alleged by the plaintiffs is infection. Thus, in alleging both direct and vicarious liability, it is a natural conclusion that the plaintiffs were seeking panel review of all the policies, procedures, and/or employee conduct that could have led to the infection Mr. Coulon developed as a result of his treatment with Dr. Juneau and the Surgery Center.

The medical review panel understood the full scope of their review, as evidenced by their opinion that there was no deviation from the standard of care on the part of the Surgery Center *and/or* its employees in relation to Mr. Coulon's infection. In fact, it specifically noted the "personnel properly monitored the patient and followed all physician orders in an appropriate and timely fashion." This conclusion encompasses the nurses' actions in treating Mr. Coulon, either under a theory of direct fault by the Surgery Center or imputed fault, which were both alleged.

With regard to imputed fault, the foundation of liability under *respondeat superior* is the employee's tort. FRANK L. MARAIST & THOMAS C. GALLIGAN, JR. LOUISIANA TORT LAW § 13.02(2d ed. 2016). *See also* La. Civ. Code art. 2320. In order for liability to attach to the employer under this doctrine, there must be some fault on the part of the employee. The allegations that the Surgery Center failed to train and supervise its nurses presuppose some negligent act by the nurses that caused Mr. Coulon harm, which the Surgery Center should have prevented by proper training and supervision. Stated differently, while the liability of an employer for negligent training and supervision is direct, for such liability to attach there must have been conduct that caused damage, and this conduct could only have been committed by an employee*, i.e*, a nurse. However, such negligence by the nurses, as employees of the Surgery Center, was specifically considered and rejected by the panel. Thus, it cannot be said now that those allegations were never before the panel, nor can it be held that those allegations were properly dismissed as premature.

Moreover, the allegation that the Surgery Center failed to "develop, maintain, and *enforce* proper policies and procedures to prevent surgical infections," which is a theory of direct liability, also speaks to the training and supervising of the employees in whose hands the prevention of surgical infections falls as a matter of practice. The use of the word "enforce" denotes the effective carrying out of an action or course of action. Mirriam-Webster's Collegiate Dictionary 272 (1961) references the synonym "implement, mean[ing] to put into effect or operation." Quite logically, the enforcement of a policy or procedure encompasses the training and supervising of the very employees who perform the actions contemplated by the policy or procedure, *i.e,* the carrying out of such policy or procedure. The Surgery Center avers the allegations of negligent training

8

and supervision are brand new allegations that do not correlate to the allegation of a failure to have proper policies and procedures to prevent infection. In particular, it contends the new allegations do not specify in what manner or practice area the nurses were not trained or supervised. However, by alleging in the complaint that the injury incurred by Mr. Coulon was infection from surgery, the petition can reasonably be understood to allege the Surgery Center is liable for failing to train and supervise its nurses *to prevent surgical infection.* By definition, the enforcing of the Surgery Center's policies and procedures means putting those policies and procedures into effect, in other words, training and supervising the employees to execute those policies and procedures.

Accordingly, we conclude the allegation that the Surgery Center did not "enforce proper policies and procedures to prevent surgical infections" encompassed the allegation that the Surgery Center did not adequately train and supervise the nurses who treated Mr. Coulon. Thus, we find the plaintiffs' petition in full survives the exception of prematurity.

## CONCLUSION

Based on the foregoing, we expressly adopt the plaintiffs' alternative argument that the language in the complaint was sufficient to include the allegations contained in paragraphs (c) and (d) of the petition. The information contained therein presented enough information for the panel to determine the Surgery Center was "entitled to the protection of the [LMMA]," which affords it the benefit of a medical review panel's expert opinion regarding a specification of the standard of care and a determination of whether that standard was breached. *Perritt*, 849 So. 2d at 65. We find that the allegations taken separately, under direct *or* vicarious liability, are sufficient to encompass the causes of action at

9

issue. Additionally, we note that the *coupling* of the two allegations renders the complaint more than sufficient to satisfy the pleading requirements of the Act.

Accordingly, we reverse the ruling that sustained the Surgery Center's exception of prematurity and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**