JOHNSON, J.
Appellant/Plaintiff, Clovina Stein, appeals the judgment from the 24th Judicial District Court, Division "K", that found no liability against Appellees/Defendants, the City of Gretna and its insurer, American Alternative Insurance Corporation (hereinafter collectively referred to as "Gretna"), for alleged injuries she sustained while being transported to the hospital. For the following reasons, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
On the morning of December 12, 2008, emergency medical services were requested at the home of Clovina Stein in Gretna, Louisiana, and emergency medical technicians, Linda Kerns and Officer Steven Verrett, answered the request.[1] Ms. Stein was transported to the hospital in the ambulance, while her sister and caretaker, Cassandra Stein, was to meet the ambulance at the hospital. Officer Verrett drove the ambulance, and Ms. Kerns was in the back of the ambulance with Ms. Stein. During the transport, Officer Verrett was forced to make a sudden stop, causing Ms. Kern to fall on top of Ms. Stein. Upon arrival at the Ochsner Medical Center located on Jefferson Highway (hereinafter referred to as "Ochsner-Jefferson Campus"), Ms. Stein received treatment for a heart attack.
On October 5, 2009, Ms. Stein filed a "Petition for Damages" against Gretna and other defendants[2] , alleging she suffered severe personal injuries when Ms. Kerns fell on her while being transported to the hospital on December 12, 2008. Ms. Stein alleged she was struck in the face and head with an object believed to be a radio.
*334 In a later amended petition,[3] Ms. Stein alleged she was taken into the emergency room at Ochsner-West Bank Campus, was told she was transported to the wrong hospital, then was subsequently transported to Ochsner-Jefferson Campus. While en route , she asserted she was struck by Ms. Kerns' radio, causing her to go unconscious. Ms. Stein alleged Officer Verrett and Ms. Kerns were negligent in their actions and were improperly trained by Gretna. As a result of the incident, Ms. Stein alleged she was swollen and bruised upon arrival at the Ochsner-Jefferson Campus. She further alleged that she suffered permanent head and facial injuries, a concussion, a permanent ear injury, injury to her jaw, a hernia, a heart attack, a stroke, exacerbation of her lupus disease, and spinal injuries, all resulting from the incident in the ambulance.
A bench trial on the merits was held on February 1 and 2, 2017, and was recessed to allow for the production of discovery responses and to locate a witness. The trial resumed on April 25, 2017. In a judgment rendered on May 15, 2017, the trial court entered a judgment in favor Gretna and dismissed Ms. Stein's claims with prejudice. In its "Reasons for Judgment," the trial court applied the qualified immunity provided in La. R.S. 37:1732(A) and found that Ms. Stein failed to show that Officer Verrett or Ms. Kerns engaged in an intentional act or omission designed to harm Ms. Stein or committed a grossly negligent act or omission. The trial court also found that Ms. Stein failed to produce any evidence that Officer Verrett and Ms. Kerns were negligent in their actions. The instant appeal followed.
ASSIGNMENTS OF ERROR
On appeal, Ms. Stein alleges the trial court erred by: 1) finding that Gretna and its employees qualified for limited immunity pursuant to La. R.S. 37:1732(A) ; 2) applying the gross negligence burden of proof rather than the negligence standard; 3) finding Gretna was not negligent in failing to train its employees, specifically Linda Kerns and Steven Verrett; 4) failing to find Gretna committed spoilage of evidence and fraud under La. C.C. art. 1953 ; 5) failing to find that Gretna's employees committed an Emergency Medical Treatment and Active Labor Act (hereinafter referred to as "EMTALA") violation by removing her from the first hospital emergency room and transporting her to a second emergency room; 6) refusing to address the issue and cause of action that Gretna's employees committed civil fraud pursuant to La. C.C. art. 1953 in an attempt to cover their negligence; 7) failing to apply the "uncalled witness" presumption against Gretna for refusing to produce Linda Kerns for trial; and 8) denying her right to call rebuttal/impeachment witness, William Pierce.
LAW AND ANALYSIS
Qualified Immunity and Gross Negligence Standard[4]
Ms. Stein alleges the trial court erred in finding that Gretna's employee, Ms. Kerns, was entitled to immunity under La. R.S. 37:1732. She argues that Gretna failed to present any evidence of Ms. Kern's training or certification and, thus, failed to meet its burden of proving that Ms. Kern qualified for the immunity. As a result, Ms. Stein alleges the trial court erred in applying the gross negligence burden of proof for this matter.
Gretna asserts that its employees, Ms. Kerns and Officer Verrett, were entitled to *335 the immunity provided to emergency medical personal under La. R.S. 37:1732, and the gross negligence standard was properly applied by the trial court. Gretna avers that, while it was its burden to prove the immunity for Officer Verrett and Ms. Kerns at trial, it was not required to provide documentation regarding the qualifications of each of the employees, as the statute has no such requirement. Gretna contends that sufficient testimony was produced at trial to justify its employees' entitlement to the immunity. Gretna further asserts that even if this Court were to find Ms. Kerns and Officer Verrett were not entitled to the immunity provisions of La. R.S. 37:1732, the error would be harmless because the trial court also found that it was not liable under general negligence.
In its Reasons for Judgment, the trial court held that, in order for Ms. Stein to recover in her action, she was required to show that Ms. Kerns or Officer Verrett engaged in an intentional act or omission designed to harm her or committed a grossly negligent act or omission. The trial court found that Ms. Stein failed to meet her burden.
La. R.S. 37:1732 provides:
A. Any fireman, policeman, or member of an ambulance or rescue squad who holds a valid current certification by the American Red Cross, L.S.U. Fireman Training Rescue Program, United States Bureau of Mines, or any equivalent training program approved by the Department of Health and Hospitals who renders emergency care, first aid, or rescue while in the performance of his duties at the scene of an emergency or moves a person receiving such care, first aid, or rescue to a hospital or other place of medical care shall not be individually liable to such person for civil damages as a result of acts or omissions in rendering the emergency care, first aid, rescue, or movement of such person receiving same to a hospital or other place of medical care except for acts or omissions intentionally designed to harm or grossly negligent acts or omissions that result in harm to such person, but nothing herein shall relieve the driver of an ambulance or other emergency or rescue vehicle from liability arising from the operation or use of such vehicle.
B. The immunity herein granted to a fireman, policeman or member of an ambulance or rescue squad in accordance with Subsection (A) of this section shall be personal to him and shall not inure to the benefit of any employer or other person legally responsible for the acts or omissions of such fireman, policeman or member of an ambulance or rescue squad nor shall it inure to the benefit of any insurer, except that no parish governing authority engaged in rendering ambulance services nor its insurer with respect to such ambulance services shall be liable for the act or omission of any member of any ambulance squad employed by it unless such individual would be personally liable therefor under the provisions of Subsection (A) hereof.
C. In order for any fireman, policeman, or member of an ambulance or rescue squad to receive the benefit of the exemption from civil liability provided for herein, he must first have taken, successfully completed, and hold a valid certification of completion of the standard first aid course recognized or approved by the American Red Cross, the United *336 States Bureau of Mines, the L.S.U. Fireman Training Rescue Program, or any equivalent training program approved by the Department of Health and Hospitals, and further he shall have a valid certification from the Red Cross, the United States Bureau of Mines, the L.S.U. Fireman Training Rescue Program, or the Department of Health and Hospitals that he has successfully completed any necessary training or refresher courses. Any such certification or refresher courses shall have standards at least equal to the standard first aid course recognized or approved by the American Red Cross, United States Bureau of Mines, or the L.S.U. Fireman Training Rescue Program.
At the trial in this matter, although Defendants presented testimony from Officer Verrett and Ryan Brown, the supervisor for the West Jefferson EMS, that suggested Ms. Kerns had the certification needed to be an EMT at the time of the incident, Gretna did not produce any evidence that Ms. Kerns had the training required by La. R.S. 37:1732(C) in order to qualify for immunity. Accordingly, we find the trial court erred in qualifying Ms. Kerns for the immunity provided under La. R.S. 37:1732 and applying the gross negligence standard to the claims against her. However, despite Ms. Stein's assignment of error concerning general negligence,[5] the trial court also found that Ms. Stein failed to prove either Ms. Kerns or Officer Verrett were negligent in their actions, and the law did not impose any liability on Gretna; consequently, there could be no vicarious liability for Gretna. Thus, because the proper negligence standard was also applied in this matter by the trial court, we find no need for a de novo review.
Employee Training
Ms. Stein alleges the trial court erred in failing to find that Gretna did not train and/or supervise its employees. She argues that Gretna failed to provide Ms. Kerns with any training as to safety protocol on the use of a seatbelt while traveling in an ambulance; thus, Ms. Kerns was not trained on the use of a seatbelt while traveling in the back of the ambulance when she was not administering medical treatment. Ms. Stein contends that, if Ms. Kerns had been properly trained on the use of a seatbelt while in the back of an ambulance by Gretna, Ms. Kerns would not have fallen on top of her during the transport and caused her multiple injuries.
Gretna asserts Ms. Stein failed to present evidence that it failed to train and/or supervise its employees, as she did not present any evidence or expert testimony that it had a duty to train and supervise its EMTs regarding the use of seatbelts in the patient compartment of an ambulance. Gretna further asserts Ms. Stein failed to present any evidence or expert testimony that reviewed any national EMT, paramedic or any similar professional protocols or trainings for the incident in question. However, it contends that it presented evidence through the testimony of a paramedic and Commander of Emergency Medical Services for Gretna, Ryan Brown, that there is no known requirement for any ambulance-seatbelt protocol, procedure, or requirement.
*337 Employers are answerable for the damage caused by their employees in the exercise of the functions in which they are employed. Bourgeois v. Allstate Ins. Co. , 02-105 (La. App. 5 Cir. 5/29/02), 820 So.2d 1132, 1135. The foundation of liability under respondeat superior is the employee's tort. Coulon v. Endurance Risk Partners, Inc. , 16-1146 (La. 3/15/17), 221 So.3d 809, 813-14. In order for liability to attach to the employer under this doctrine, there must be some fault on the part of the employee. Id. at 814. While the liability of an employer for negligent training and supervision is direct, for such a liability to attach, there must have been conduct that caused damage, and this conduct could have only been committed by an employee. Id.
At trial, Ms. Stein presented the expert testimony of Raymond Burkhart, Jr. Mr. Burkhart was admitted by the trial court as an accident reconstruction and safety expert. He opined there was no problem with an EMT administering emergency aid in back of an ambulance but insisted that was not the circumstance for the incident involving Ms. Stein, implying Ms. Kerns was not administering emergency aid. Mr. Burkhart determined that the lack of seatbelt usage by Ms. Kerns was the primary causative factor of her falling on Ms. Stein, not the sudden braking of the ambulance.
For the defense, Commander Brown testified that the "Region One Protocol" was the protocol for all 911 services in the Greater New Orleans area. Commander Brown stated that the Region One Protocol did not address the use of seatbelts in the back of ambulances, and he was not aware of any protocol that required emergency service workers to wear a seatbelt when they were not rendering emergency services. Generally, he averred that EMTs are not expected to be buckled by a seatbelt while in the back of an ambulance because they have to check vital signs on the patient and perform other tasks instructed by the doctor.
After review, we find that Ms. Stein failed to prove that Gretna failed to properly train and/or supervise its employees on the use of seatbelts in ambulances. Although Ms. Stein presented expert testimony opining the incident occurred because Ms. Kerns failed to use a seatbelt, Ms. Stein neither met her burden of showing that Gretna was required to train its EMTs on the use of seatbelts nor did she establish what the protocol was for the use of seatbelts by EMTs. Therefore, without such evidence, we cannot find the trial court erred in its determination that Gretna cannot be held liable for any alleged failure to train and/or supervise its employees.
Spoliation and EMTALA violation [6]
Ms. Stein alleges the trial court erred in failing to find Gretna committed spoilage of the evidence and fraud. She argues that Gretna's failure to produce Ms. Kerns' personnel record and training certifications and the dispatch logs and/or recordings prevented the presentation of evidence in her favor, resulting in the spoliation of evidence. Ms. Stein contends that Officer Verrett and Ms. Kerns violated the EMTALA by transporting and unloading her at the Ochsner-Westbank Campus' emergency room then subsequently transporting her to the Ochsner-Jefferson Campus' emergency room, without rendering any medical treatment to her at the Ochsner-Westbank Campus. She maintains that, but for the violation of EMTALA of transporting her from one hospital to another by Gretna's employees, there would have been no accident. Because of Gretna's destruction and/or suppression of records, Ms. Stein contends fraud is obvious *338 on the part of Gretna and alleges the trial court erred in failing to find spoliation of the evidence.
Gretna first asserts that the federal EMTALA has no bearing on the facts of this matter because it imposes no requirements on ambulatory services, as the responsibilities of the ambulatory service and its employees are solely a matter of state law. Gretna further asserts Ms. Stein failed to present sufficient evidence (through lay or expert testimony) at trial that her damages were, in whole or in part, caused by the alleged transport to and removal from the Ochsner-West Bank Campus. Gretna contends that, although Ms. Stein and her sister provided self-serving testimony, Ms. Stein presented no testimony of any of the employees of the Ochsner-West Bank Campus to corroborate her allegation that she was transported to that location. To the contrary of Ms. Stein's allegation, Gretna avers that it provided the testimony of Dr. John Phillips, the Chief of Medicine and Medical Director for the Ochsner-West Bank Campus Emergency Room, proving that Ms. Stein was not transported to the Ochsner-West Bank Campus or brought into the emergency room. Regarding Ms. Stein's allegation of spoliation, Gretna argues that it presented the Jefferson Parish Sheriff's Office's "Incident History Detail" to Ms. Stein and the trial court, documenting the call for service to her home on December 12, 2008. Instead of obtaining and producing independent and verifiable evidence conclusively showing that she was transported to the Ochsner-West Bank Campus prior to being transported to the Ochsner-Jefferson Campus, Ms. Stein attempted to shift the burden of proof, and the trial court properly declined to grant Ms. Stein's request for an adverse inference based upon spoliation.
To begin, we agree with Gretna's assertion that EMTALA is inapplicable in this matter. EMTALA establishes specific requirements of conduct for covered hospitals and provides special rules for enforcement of those requirements, which creates a federal cause of action. Spradlin v. Acadia-St. Landry Med. Found. , 98-1977 (La. 2/29/00), 758 So.2d 116, 121-22. Ochsner Clinic Foundation was dismissed from the action, and the remaining defendants in the matter were not covered under the Act. Thus, we find EMTALA does not apply to the facts of this case.
In regard to the law of spoliation of evidence, this Court in Longwell v. Jefferson Parish Hosp. Serv. Dist. No. 1 , 07-259 (La. App. 5 Cir. 10/16/07), 970 So.2d 1100, 1104, writ denied , 07-2223 (La. 1/25/08), 973 So.2d 756, citing Desselle v. Jefferson Parish Hosp. Dist. No. 2 d/b/a East Jefferson Gen. Hosp. , 04-455 (La. App. 5 Cir. 10/12/04), 887 So.2d 524, 534, recounted the law as follows:
The theory of "spoliation of evidence" refers to an intentional destruction of evidence for purpose of depriving opposing parties of its use. A plaintiff asserting a state law tort claim for spoliation of evidence must allege that the defendant intentionally destroyed evidence. Allegations of negligent conduct are insufficient. Where suit has not been filed and there is no evidence that a party knew suit would be filed when the evidence was discarded, the theory of spoliation of evidence does not apply. The tort of spoliation of evidence has its roots in the evidentiary doctrine of "adverse presumption," which allows a jury instruction for the presumption that the destroyed evidence contained information detrimental to the party who destroyed the evidence unless such destruction is adequately explained.
(Internal citations omitted).
In this matter, Ms. Stein argued that Gretna's failure to produce dispatch logs *339 and/or phone recordings that proved she was first taken to the emergency room at the Ochsner-West Bank Campus constituted spoliation of the evidence. However, Ms. Stein failed to prove such logs or recordings, other than the "Incident History Detail" produced by Gretna, were maintained or possessed by Gretna. To the contrary, Gretna provided ample evidence to support its position that Ms. Stein was not transported to the Ochsner-West Bank Campus. The "Incident History Detail" showed no indication that Ms. Stein was transported to the Ochsner-West Bank Campus on the day in question, only a transport to the Ochsner-Jefferson Campus. Furthermore, Officer Verrett testified that he only transported Ms. Stein to the emergency room at the Ochsner-Jefferson Campus because that is where he was instructed to transport her. Dr. Phillips confirmed that an electronic record is made for individuals transported to the emergency room by ambulance and subsequently transferred to another facility, but there were no notations in the Ochsner-West Bank Campus' electronic record that Ms. Stein was brought to that emergency room on December 12, 2008.
The preponderance of the evidence produced by Gretna supports a finding that Ms. Stein was not transported to Ochsner-West Bank Campus before being transported to Ochsner-Jefferson Campus. Ms. Stein has not produced any evidence sufficient to refute that fact. Consequently, she has failed to show the existence of any logs and/or recordings that indicate she was first transported to Ochsner-West Bank Campus, or that any such logs and/or recordings were destroyed by Gretna. We, therefore, conclude the trial court did not err in failing to find spoliation of the evidence.
Furthermore, during trial, the trial judge inquired about the production of Ms. Kerns' personnel file with Gretna. The trial judge reprimanded Gretna for not producing its personnel file to Ms. Stein during discovery, and the file was provided to Ms. Stein. Thus, Ms. Stein had access to the information contained in Ms. Kerns' personnel file. Accordingly, to the extent that information from Ms. Kerns' file was favorable to Ms. Stein's case, we find that Ms. Stein was not prevented from presenting that evidence.
Fraud pursuant to La. C.C. art. 1953
Ms. Stein alleges the trial court erred in refusing to address whether Ms. Kerns and Officer Verrett committed civil fraud pursuant to La. C.C. art. 1953 by deliberately omitting the accident and injuries she incurred while being transported to the hospital from the certified EMS Run Report. She argues that the fraudulent cover-up and alteration of the EMS Run Report certified pursuant to the Health Insurance Portability and Accountability Act of 1996 (hereinafter referred to as "HIPPA") is supported by the testimony and prima facie evidence presented at trial. Ms. Stein contends that the EMS Run Report in the certified medical records did not contain the same information as EMS Run Report that was produced during the discovery phase.
Gretna avers that the trial court, after considering Ms. Stein's purported basis of the alleged fraud claim, properly denied Ms. Stein's motion for leave to amend and/or supplement her petition. As such, it contends the record does not provide a basis to find that the trial court committed palpable error for this Court to reconsider the issue.
La. C.C. art. 1953 states, "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence *340 or inaction." In pleading fraud, the circumstances constituting fraud shall be alleged with particularity. La. C.C.P. art 856.
In this matter, on May 27, 2016, Ms. Stein filed her "Motion for Leave to File Third Amended Petition," nearly seven years after the filing of her original petition. In the motion, Ms. Stein sought to amend her petition to include an allegation of fraud pursuant to La. C.C. art. 1953, et seq. , for the alteration of a HIPPA medical record, the EMS Run Report. Gretna opposed the motion, and the trial court set the matter for a hearing. After the hearing on the motion, the trial court denied the motion and struck the proposed third amended petition from the record. In its "Reasons for Judgment," the trial court found that the EMS Reports had been available to Ms. Stein in her medical records for several years, and the amendment of her petition at that time would force a continuance in the matter that had been pending for almost seven years.
Pursuant to La. C.C.P. art. 1151, after an answer has been served, a plaintiff may amend a petition only by leave of court or by written consent of the adverse party. The court may permit the mover to file a supplemental petition setting forth causes of action which have become exigible since the date of filing the original petition and are related to or connected with the cause of action. La. C.C.P. art. 1155. The decision to grant leave to amend or supplement a pleading is within the sound discretion of the trial court, and its ruling will not be disturbed absent an abuse of discretion indicating a possibility of resulting injustice. Graci v. Gasper John Palazzo, Jr., L.L.C. , 09-347 (La. App. 5 Cir. 12/29/09), 30 So.3d 915, 919, writ denied , 10-248 (La. 4/9/10), 31 So.3d 394. Amendments should be permitted if: 1) the movant is acting in good faith; 2) the amendment is not being used as a delay tactic; 3) the opponent will not be unduly prejudiced; and 4) the trial will not be unduly delayed. Harris v. Union Nat'l Fire Ins. Co. , 14-1603 (La. App. 1 Cir. 6/18/15), 175 So.3d 1008, 1012.
After review, we do not find the trial court erred in refusing to consider Ms. Stein's allegations of fraud. Ms. Stein included her allegation of fraud in a third amended petition, which required leave of court to be filed into the record. In its denial of Ms. Stein's motion, the trial court reasoned that the amendment would force a continuance in the matter that had already been pending for years. We find the trial court did not abuse its discretion in denying Ms. Stein's motion because the amendment of her petition would unduly delay the matter. Thus, since the request to amend her petition had been denied by the trial court and upheld on review,[7] Ms. Stein's allegation of fraud was not properly before the trial court for consideration, and the trial court did not err in declining to address the matter.
"Uncalled Witness" Presumption
Ms. Stein alleges the trial court erred in not applying the "uncalled witness" presumption for Gretna's failure to call or produce Ms. Kerns at trial, even after being ordered to do so. Ms. Stein argues that Ms. Kerns could have been questioned regarding the incident, EMS Run Report, and training, if her whereabouts were not hidden by Gretna.
Gretna asserts Ms. Kerns is no longer under its power for purposes of the uncalled witness rule. It contends that, because Ms. Stein's counsel was unable to *341 locate Ms. Kerns for trial, she is attempting to place the blame on Gretna for her failure. Gretna further asserts that even if Ms. Kerns was located for trial, her testimony would have been cumulative because Ms. Stein entered into evidence Ms. Kerns' deposition, which stated that Ms. Stein was not brought to the Ochsner-West Bank Campus and she was conscious during the entire transport. Gretna argues that, despite Ms. Stein's assertions, it attempted multiple times by phone and email to contact Ms. Kerns, to no avail. Consequently, Gretna contends the trial court properly denied Ms. Stein's request to enforce the uncalled witness rule.
An adverse presumption exists when a party having control of a favorable witness fails to call him or her to testify, even though the presumption is rebuttable and is tempered by the fact that a party need only put on enough evidence to prove the case. In re Succession of Barattini , 11-752 (La. App. 5 Cir. 3/27/12), 91 So.3d 1091, 1096, quoting Nunnery v. City of Kenner , 08-1298 (La. App. 5 Cir. 5/12/09), 17 So.3d 411. The adverse presumption is referred to as the "uncalled witness" rule and applies when a party has the power to produce a witness who would elucidate the transaction or occurrence and fails to call that witness. Id. When the party does not produce a reasonable explanation for its failure to call that witness, the court may presume that the witness' testimony would have been unfavorable. Roth v. New Hotel Monteleone L.L.C. , 07-549 (La. App. 5 Cir. 1/30/08), 978 So.2d 1008, 1012.
As previously mentioned, Gretna did not produce Ms. Kerns' personnel file to Ms. Stein during the discovery phase; thus, Ms. Stein did not have access to all of the location information Gretna had for Ms. Kerns. During the trial in this matter, Gretna was ordered to produce information regarding Ms. Kerns' whereabouts to Ms. Stein. In the interest of justice, the trial court allowed Ms. Stein the opportunity to locate Ms. Kerns from the information provided in Gretna's personnel file for Ms. Kerns. After two continuations of the trial, Ms. Stein was still unable to locate Ms. Kerns. At the adverse presumption hearing, Gretna argued that it provided all of the information it had for Ms. Kerns and even attempted to contact Ms. Kerns, to no avail. The trial court found that Ms. Kerns was an unavailable witness and allowed Ms. Kerns' deposition to be admitted into evidence, as both parties agreed that the deposition should have been admitted. The trial court then denied Ms. Stein's motion and any adverse inferences regarding the availability of Ms. Kerns for trial and proceeded with the trial.
After review, we do not find the trial court erred in not applying the uncalled witness rule in this matter. Gretna produced the information it had concerning the whereabouts for Ms. Kerns to Ms. Stein; thus, it cannot be said that Gretna attempted to hide Ms. Kerns from the proceeding. Furthermore, despite Ms. Stein's argument that she could have questioned Ms. Kerns regarding the incident, EMS Run Report, and training if her whereabouts were not hidden by Gretna, the assertion has no merit. Ms. Kerns testified through a deposition, where counsel for both sides were present. Ms. Stein had the opportunity to question Ms. Kerns about those things during the deposition but failed to do so. Accordingly, we find that the adverse presumption should not have been imputed against Gretna because it provided the information regarding Ms. Kerns' whereabouts and Ms. Kerns attended a deposition to give her testimony.
Refusal to allow rebuttal/impeachment witness to testify
Ms. Stein alleges the trial court erred in denying her the right to call rebuttal *342 and/or impeachment witness, William "Liam" Pierce. She argues that the trial court had no basis for preventing Mr. Pierce from impeaching and rebutting the testimony of Gretna's witnesses at trial.
Gretna asserts the trial court properly excluded the testimony of Mr. Pierce because he was never identified prior to trial either in discovery or on Ms. Stein's trial witness list and no expert report was ever authored by him. Gretna further asserts that the admission of Mr. Pierce's testimony would have been in violation of the pre-trial order, which required the disclosure of experts and expert reports prior to the trial on the merits.
La. C.C.P. art 1551 provides that a trial court may issue a pre-trial order that controls the subsequent course of the action, such as the identification of witnesses, documents, and exhibits prior to trial. If a party's attorney fails to obey a pre-trial order, the court may render such orders that are just for the violation. La. C.C.P. art. 1551(C). Whether witnesses, expert or otherwise, are permitted to testify is within the trial judge's discretion and may only be overturned when that discretion is abused. Dufrene v. Willingham , 97-1239 (La. App. 5 Cir. 10/28/98), 721 So.2d 1026, 1032. The trial judge has wide discretion in excluding testimony from witnesses not listed in pre-trial agreements. Higgins v. Am. Nat'l Gen. Ins. Co. , 01-193 (La. App. 5 Cir. 9/25/01), 798 So.2d 1078, 1083.
During trial, the attorney for Ms. Stein informed the court that he was contemplating calling Mr. Pierce, who was present in the courtroom, as an expert witness for rebuttal and impeachment purposes. Opposing counsel objected to Mr. Pierce's testimony on the basis that he had not been identified as a witness prior to trial. The trial judge informed Ms. Stein's attorney that she did not conduct "trial by ambush" and thought that allowing an expert who had never been identified prior to trial to testify on rebuttal or for impeachment purposes was inappropriate under the rules of procedure. The trial judge noted that such a witness was certainly not allowed under the pre-trial order. The trial judge excluded Mr. Pierce from testifying at trial but allowed Ms. Stein to proffer his testimony.
After review, because the record does not reflect that Mr. Pierce was listed in any capacity on the pre-trial witness list for Ms. Stein, we find the record supports a basis for the trial judge to exclude the rebuttal and/or impeachment testimony of Mr. Pierce. Ms. Stein attempted to violate the pre-trial order, and the trial judge rendered a ruling that she thought was just. Accordingly, we do not find the trial court abused its discretion in excluding Mr. Pierce's testimony.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed in favor of the City of Gretna and its insurer, American Alternative Insurance Corporation, and against Clovina Stein. Ms. Stein is to bear the costs of this appeal.
AFFIRMED

The "Incident History Detail" generated by the Jefferson Parish Sheriff's Office notated that Ms. Stein felt like she was having a heart attack.

The other defendants, Emergency Medical Services Paramedic Association, Mayor Ronnie C. Harris, Linda Kerns, Steven Verrett, and Ochsner Clinic Foundation were later dismissed from the action.

We note that Ms. Stein amended her petition three times.

Issues One and Two are interrelated and will be jointly addressed.

We note that Ms. Stein lists, "The trial court erred in applying [the] gross negligence burden of proof to Appellant, rather than negligence standard" as an assignment of error; however, she did not brief any argument regarding Gretna's alleged general negligence. Therefore, our review will focus on the arguments provided in Ms. Stein's brief. See , Uniform Rules-Courts of Appeal, Rule 2-12.4(B)(4).

Issues Four and Five are interrelated and will be jointly addressed.

We note that the denial of Ms. Stein's request to amend her petition was reviewed in a supervisory writ, Stein v. City of Gretna, et al. , 16-530 (La. App. 5 Cir. 9/14/16)(unpublished writ disposition), writ denied , 16-1773 (La. 11/29/16), 210 So.3d 806.